BURBA v BURBA (AFTER REMAND)

Docket No. 112311. Argued November 9, 1999 (Calendar No. 7). Decided
April 18, 2000.

Joseph C. and Myriam C. Burba consented to a divorce judgment in
1989. Myriam Burba was awarded alimony of $900 a month for
thirty months. The judgment provided that the parents would have
joint legal and physical custody of their minor children, and that
Joseph Burba was to pay $500 a month in child support during the
children's minority. In February 1995, Myriam Burba sought to
change the child support order. An administrative referee found
that she earned $16,000 a year, and that Joseph Burba earned
approximately $103,000 a year. On the basis of these figures, and
after making appropriate adjustments for Mr. Burba's second fam-
ily, the referee recommended that he be ordered to pay $1,278 per
month in child support. The recommendation resulted from the ref-
eree's application of the Michigan Child Support Formula's sole
custody calculation, rather than the formula's joint legal and physi-
cal custody calculation. Mr. Burba objected to the recommenda-
tion, and a hearing was held before the Washtenaw Circuit Court. A
friend of the court attorney argued in favor of adoption of the rec-
ommendation, noting that, although the referee failed to follow the
shared economic responsibility formula, he did so because of the
huge disparity in incomes of the parties. Mr. Burba argued that
income disparity should not be a consideration for deviating from
the formula. The court, Donald E. Shelton, J., invoked its powers of
equity to deviate from the formula and set child support at $900 a
month. The Court of Appeals, MARKEY, P.J., and MACKENZIE and
SAWYER, JJ., denied leave (Docket No. 188288). The Supreme Court
remanded the case to the Court of Appeals as on leave granted. 454
Mich 851 (1997). On remand, the Court of Appeals, SAWYER, P.J., and
BANDSTRA and J. B. SULLIVAN, JJ., affirmed the award of $900 a month
in child support in an unpublished opinion per curiam, stating that
the trial court had complied with the statute and set forth sufficient
reasons on the record to deviate from the formula (Docket No.
200591). Joseph Burba appeals.

In an opinion by Justice CAVANAGH, joined by Justices KELLY,
TAYLOR, CORRIGAN, YOUNG, and MARKMAN, the Supreme Court held:

The trial court did not adequately fulfill its statutory duty to memorialize and explain its holding.

1. Under MCL 552.17; MSA 25.97, courts must order child support in an amount determined by application of the child support formula. A court may deviate from the formula if it determines from the facts of the case that application would be unjust or inappropriate and sets forth in writing or on the record the amount of support determined by application of the formula, how the support order deviates from the formula, the value of property or other support awarded in lieu of the payment of child support, if applicable, and the reasons why application of the formula would be unjust or inappropriate.

2. In this case, the trial court never stated the level of support it would have ordered had it followed the formula. While the court stated on the record the amount of the order it was entering, because it did not state the formula amount, that statement did not provide an explanation of how the order deviated from the formula. Additionally, an income disparity between the parties does not render application of the formula unjust or inappropriate. Parents' incomes are accounted for when child support levels initially are set because they are one of the factors used in the formula, and the formula sets exact support levels on the basis of parents' incomes, including parents whose incomes are disparate. Any income disparity is already considered by the formula, which the courts must follow. An interpretation that considers income disparity as a factor rendering the formula unjust or inappropriate, justifying deviation from the formula, is repugnant to the legislative intent that income be dealt with as it is dealt with by the formula. Finally, the written report required under MCL 552.517(3); MSA 25.176(17)(3), where the friend of the court determines that the facts of the case render application of the formula unjust or inappropriate, was never produced, but, despite this failure, the friend of the court attorney argued for a recommendation that deviated from the formula. Because of these errors, no recommendation was issued that was based on an analysis of the actual facts of the case. Thus, remand to the trial court is required to permit Mrs. Burba's petition to be evaluated under applicable statutory procedures.

Chief Justice WEAVER, concurring, stated that reversal should be based solely on the friend of the court's error, which went uncorrected by the trial judge.

In preparing its recommendation, the friend of the court proceeded as if this case involved sole custody, rather than shared custody, and made a recommendation based on the sole custody guidelines. Instead of remanding to the referee for a recommenda-

tion based on accurate information, the trial court proceeded with the hearing, ultimately adopting a support payment that was in excess of the support levels recommended by the formulas for shared custody. Thus, the case should be reversed and remanded for further proceedings because the trial court did not have the proper recommendation before it. However, a trial court should not be precluded from considering the parties' disparity of income in determining whether the application of the child support formula would be unjust or inappropriate under MCL 552.17(2); MSA 25.97(2).

Reversed and remanded.

*Judith A. Curtis* for the plaintiff-appellant.

*Gary A. Kozma* for the defendant-appellee.

Amicus Curiae:

*David K. Hanson* for Washtenaw County Friend of the Court.

AFTER REMAND

CAVANAGH, J. This case requires us to determine the scope of a trial court's duty under MCL 552.17; MSA 25.97 when it deviates from the support levels established by the Michigan Child Support Formula. We hold that in this case, the trial court did not adequately fulfill its duties. Thus, we reverse and remand for further proceedings.

I

Plaintiff Joseph and defendant Myriam Burba were married in 1976. Their union produced two daughters, but, after separating in 1986, the Burbas consented to a divorce judgment in 1989. The consent judgment awarded defendant alimony of $900 a month for thirty months. It also provided that the parents would have

joint legal and physical custody of their minor children, with the children spending equal time with each parent. In conjunction with the custody provisions, a modified abatement procedure was ordered, reducing the abatement period from eight to five days.[1] Finally, the consent judgment ordered plaintiff to pay $500 a month in child support during the children's minority.

In February 1995, defendant filed a petition pro se to change the child support order. An administrative referee found that defendant earned $16,000 a year, and that plaintiff earned approximately $103,000 a year. On the basis of these figures, and after making appropriate adjustments for plaintiff's second family, the referee recommended that plaintiff be ordered to pay $1,278 a month in child support. This recommendation resulted from the referee's application of the formula's sole custody calculation, rather than the formula's joint legal and physical custody calculation. The latter, also called the shared economic responsibility formula, was applicable because the parties shared joint physical and legal custody of the children. Thus, plaintiff objected to the referee's recommendation.

Because of this objection, the recommendation went to a hearing before the Washtenaw Circuit Court. At this hearing, defendant remained unrepre-

---

[1] Parenting time abatement provides that when a child spends a designated number of consecutive overnight periods with the noncustodial parent, the support obligation is abated by fifty percent for the time spent with the noncustodial parent. See Michigan Child Support Formula Manual (West, 1999), § IV(C). When the Burbas were divorced, the standard abatement period was eight days, but the consent judgment provided a five-day abatement period. Notably, the formula recommends that abatement should not be used in conjunction with the shared economic responsibility formula. *Id.*

sented, but a friend of the court (FOC) attorney argued in favor of the court adopting the recommendation. This attorney acknowledged that the referee failed to follow the shared economic responsibility formula, but she suggested that he did so because of the "huge disparity in income between these parties . . . ."[2] Plaintiff argued that income disparity should not be a consideration for deviating from the formula, but, despite plaintiff's efforts, the court invoked its powers of equity to deviate from the formula. The trial court stated:

> Well, I often use the shared formula, but—when it's appropriate. But I do think that—As I said, the reason the Court sits as a court in equity is to take into account the peculiar circumstances. The circumstances of this judgment are that the parties have provided for a modified abatement procedure. The parties originally did provide for the $500 support level at a time when there was alimony. And finally, I also do consider as an equitable factor the tremendous disparity in income.
>
> I don't believe that applying or not applying the shared-economic-responsibility formula is necessarily an all-or-nothing proposition, however.
>
> I'm going to adopt the Friend of the Court recommendation in part. I am going to modify the amount of child sup-

---

[2] The reason the sole custody amount was applied is in dispute between the parties. On the basis of the FOC attorney's statement that "In these cases the [FOC] recommends deviation from the child-support guidelines because of the huge disparity in income," plaintiff claims that the FOC has a policy of ignoring the formula when an income disparity is present. The FOC disagrees, saying the referee made a factual error that caused the FOC attorney to misspeak because she was "obviously confused" by the recommendation.

In any event, the trial court deviated from the formula, in part on the basis of an income disparity between the parties. That decision is under review here, so regardless of the FOC policy, we must consider the propriety of deviating from the formula on the basis of income disparity.

port and set child support at the amount of $900 per month. I'll sign an order to that effect.

Plaintiff appealed this ruling, but the Court of Appeals denied leave. This Court remanded the case to the Court of Appeals as on leave granted. 454 Mich 851 (1997). The Court of Appeals affirmed the trial court's award of $900 a month in child support, stating that after its review of the record, it believed the trial court complied with the statute and set forth sufficient reasons to deviate on the record. Unpublished opinion per curiam, issued May 8, 1998 (Docket No. 200591).

II

Historically, Michigan courts were given little guidance in ordering child support. For example, formerly, when a divorce order was entered, a court was only advised that it was authorized to "make such further decree as it shall deem just and proper, concerning the care, custody and maintenance of the minor children of the parties . . . ."[3] In 1982, however, the Legislature passed the Michigan Friend of the Court Act, 1982 PA 294, which required the State Court Administrative Office's Friend of the Court Bureau to develop "[a] formula to be used in establishing and modifying a child support amount . . . ." MCL 552.519(3)(a)(vi);  MSA 25.176(19)(3)(a)(vi).

Work began on the formula in 1983, and the FOC adopted the guidelines in 1987. Michigan Child Support Formula Manual (West, 1999), p v. By the Legisla-

---

[3] 1939 PA 134, as amended by 1989 PA 274, 1990 PA 243,  1990 PA 291, 1996 PA 9, MCL 552.16;  MSA 25.96.

ture's command, the formula had to be based on the needs of the child and the actual resources of each parent (subsection 19[3]). As drafted, the formula is based on factors including parental income, family size, and the children's ages. Manual, p vi. In 1989, the Legislature began requiring courts to follow the formula when setting child support levels. MCL 552.16(2); MSA 25.96(2).[4]

Once child support is set under the formula, though, it is not cast in stone, because courts can modify the initial order. A court's ability to modify its initial child support order experienced an evolution similar to its ability to initially set the order, with courts formerly told that they could alter support orders "as the circumstances of the parents, and the benefit of the children shall require."[5] After the formula became mandatory, however, courts must follow § 17 when modifying child support orders. *Ghidotti v Barber*, 459 Mich 189, 200; 586 NW2d 883 (1998). In pertinent part, § 17 provides:

> (2) Except as otherwise provided in this section, the court shall order support in an amount determined by application of the child support formula developed by the state friend of the court bureau. The court may enter an order that deviates from the formula if the court determines from the facts of the case that application of the child support formula would be unjust or inappropriate and sets forth in writing or on the record all of the following:

---

[4]   Except as otherwise provided in this section, the court shall order support in an amount determined by application of the child support formula developed by the state friend of the court bureau.

[5]   This language can be traced to Revised Statutes of 1846, ch 84, § 17. It remained unaltered until amended by 1990 PA 243, and by 1996 PA 9. MCL 552.17; MSA 25.97.

(a) The support amount determined by application of the child support formula.

(b) How the support order deviates from the child support formula.

(c) The value of property or other support awarded in lieu of the payment of child support, if applicable.

(d) The reasons why application of the child support formula would be unjust or inappropriate in the case.

III

A

As this Court held in *Ghidotti, supra,* the criteria for deviating from the formula are mandatory. Generally, the Legislature has prescribed that courts shall follow the formula, but it also allows deviation in appropriate circumstances following a specific procedure, as set forth in § 17. The importance the Legislature attached to courts carefully articulating these factors when deviating from the formula cannot be underestimated, for the Legislature prescribed their use when courts deviate from the formula in no less than eight different sections of the Michigan Compiled Laws. See MCL 552.15; MSA 25.95 (allowing order of support during pendency of divorce proceedings); MCL 552.16; MSA 25.96 (allowing order of support pursuant to divorce); MCL 552.17; MSA 25.97 (allowing postjudgment alteration of support); MCL 552.452; MSA 25.222(2) (allowing order of support upon custodial parent's complaint); MCL 722.3; MSA 25.244(3) (allowing support order upon prosecuting attorney's petition); MCL 722.27; MSA 25.312(7) (allowing order of support in varying scenarios); MCL

722.717;   MSA 25.497 (allowing order of filiation and support); MCL 780.164;   MSA 25.225(14) (allowing order of support when proceedings began in foreign jurisdiction).

### B

After reviewing the record, we conclude that the trial court did not adequately fulfill its statutory duty to memorialize and explain its holding.[6]

### 1

The trial court, when it deviates from the formula, must first state the level of child support it would have ordered had it followed the formula (§ 17). In this case, the trial court never, in writing or on the record, stated the level of support it would have ordered had it followed the formula. At the hearing before the Washtenaw Circuit Court, the FOC attorney mentioned that under the shared economic responsibility formula, the child support would have been $470.16 a month. The court, however, made no such articulation.

In light of the Legislature's repeated requirement that the court articulate these factors when deviating from the formula, we hold that the FOC attorney's mention of the formula amount does not satisfy the statute. Courts presumptively must follow the formula, *Ghidotti, supra* at 200. To impress upon the courts the gravity of deviating from the formula, the

---

[6] In this case, we do not decide whether a violation of a single requirement of § 17 would require reversal. Rather, we hold that the several errors made in this case do require reversal.

Legislature has required them to meticulously set forth these factors when deviating. Anything less fails to fulfill the statutory procedure.

2

Next, the trial court did state on the record the amount of the order it was entering, but, because it did not state the formula amount, that statement did not provide an explanation of how the order deviated from the formula. Thus, subsection 17(2)(b) was similarly unfulfilled.

3

Finally,[7] though it referred to them as "circumstances of this judgment" of divorce, the court did attempt to articulate reasons application of the formula was unjust or inappropriate. It stated that the modified abatement procedure, the initial award of alimony, and the income disparity between the parties favored setting child support at $900 a month.

Throughout this case, plaintiff has challenged income disparity as rendering application of the formula unjust or inappropriate. We agree with plaintiff that an income disparity between the parties does not render application of the formula unjust or inappropriate.

---

[7] Subsection 17(2)(c), addressing property awarded in lieu of child support, has no application to this case, and by its own terms need only be articulated "if applicable."

a

Modification of a child support order is a matter within the trial court's discretion. *Polley v Polley*, 367 Mich 455, 457; 116 NW2d 924 (1962). Therefore, we review its decision for an abuse of discretion. *Id.* Whether a trial court operating within the statutory framework of MCL 552.17;  MSA 25.97 may properly consider income disparity as a reason to depart from the amount determined by application of the child support formula is, however, a question of law. Questions of law are reviewed de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

b

This case involves the interpretation of MCL 552.17; MSA 25.97, specifically, whether an income disparity renders application of the Michigan Child Support Formula unjust or inappropriate under this section. When construing a statute, our foremost duty is to discern and give effect to the Legislature's intent. *Murphy v Michigan Bell Telephone Co*, 447 Mich 93, 98; 523 NW2d 310 (1994). This task begins with an examination of the statutory language itself, which provides the most reliable evidence of legislative intent. *Sun Valley Foods Co v Ward*, 460 Mich 230, 234; 596 NW2d 119 (1999).

The Court of Appeals contended that nothing in the language of the statute suggests that an income disparity, or any other fact, is not an appropriate basis

for deviating from the formula.[8] Section 17, however, specifically references the formula, which is based on parental income, family size, and the children's ages. Manual, *supra*, p vi. Indeed, the Legislature directed that the formula be based on the children's needs and the actual resources of each parent. MCL 552.519(3); MSA 25.176(19)(3). Thus, when we consider the bases of the formula, we conclude that the Legislature did not intend an income disparity between divorced parents to render application of the formula unjust or inappropriate. Parents' incomes are accounted for when child support levels are set because they are one of the factors used in the formula, and the formula sets exact support levels on the basis of parents' incomes, including parents whose incomes are disparate. MCL 552.519(3)(a)(vi); MSA 25.176(19)(3)(a)(vi); Manual, *supra*, pp v, 46-85 (setting support levels based on income). Any income disparity, therefore, is already considered by the formula, which Michigan courts must follow. An interpretation of § 17 that considers income disparity as a factor rendering the formula unjust or inappropriate, justifying deviation from the formula, is repugnant to the Legislature's intent that income be dealt with as it is dealt with by the formula. Further, a "double-dipping" into income would occur were income disparity

---

[8] In its decision, the Court of Appeals referenced MCL 552.16; MSA 25.96 rather than MCL 552.17; MSA 25.97. Section 16, however, primarily governs an initial order of child support rather than modifications of support. Thus, our decision focuses on § 17, which governs alteration of child support decrees.

Interpreting the same statutory language, the Court of Appeals held:

Nowhere in the statute is an interpretation suggested that the trial court may not consider the parties' income as a factor in supporting its decision to deviate from the child support formula.

an appropriate basis for deviating from the formula because income would be a factor when the support level was initially set by the formula, and then again when a court deviates from the formula because of income.[9] Accordingly, as a matter of law, income disparity between the parties is not an appropriate reason for deviating from the formula under § 17. Because the trial court relied on a legally improper reason for departing from the amount determined by application of the child support formula, its decision amounted to an abuse of discretion.

IV

Unfortunately, the errors in this case were not limited to those made by the trial court in applying § 17. Rather, the Washtenaw County FOC also made significant errors. As mentioned above, the referee applied the sole custody calculations to this joint physical and legal custody scenario. Additionally, under MCL 552.517(3); MSA 25.176(17)(3), if the FOC determines

---

[9] As mentioned above, the trial court also offered the modified abatement procedure and the expiration of alimony as bases for deviating from the formula. Throughout the history of this case, however, the focus has been on income disparity as a basis for deviation, and we retain that focus here.

Nevertheless, we will briefly address the other bases offered. First, the modified abatement procedure did not render application of the formula unjust or inappropriate. The formula provides that abatement should not even be used in a shared economic responsibility situation, so a provision of the consent judgment of divorce that brought the initial order closer to the formula's provisions, because it limited abatement, was not a basis to deviate from the formula.

Similarly, the expiration of alimony was not a basis for deviation under § 17. In their consent judgment of divorce, the parties agreed that alimony would cease after thirty months. Thus, defendant cannot now claim, and the trial court cannot rely upon, the end of alimony as "changed circumstances" justifying a child support modification.

that the facts of the case render application of the formula unjust or inappropriate, the FOC is required to prepare a written report including:

> (a) The support amount, based on actual income earned by the parties, determined by application of the child support formula and all factual assumptions upon which that support amount is based.
>
> (b) An alternative support recommendation and all factual assumptions upon which the alternative support recommendation is based.
>
> (c) How the alternative support recommendation deviates from the child support formula.
>
> (d) The reasons for the alternative support recommendation.
>
> (e) All evidence known to the friend of the court that the individual is or is not able to earn the income imputed to him or her.

In the instant case, no such report was ever produced, but, despite this failure, the FOC attorney argued for a recommendation that deviated from the formula.

Thus, because of these errors, no recommendation was issued that was based on an analysis of the actual facts of this case. The statutory procedures described in this opinion are mandatory. *Ghidotti*, *supra* at 200. Because the Washtenaw County FOC and the trial court failed to observe these procedures, a simple affirmance or reversal in this case would deprive the parties of the benefit of the statutory procedures designed for these cases. Therefore, we remand this case to the trial court so that defendant's petition can be evaluated under the applicable statutory procedures.

V

For the reasons stated, the decisions of the lower courts are reversed, and this case is remanded for a calculation of a support order consistent with this opinion.

KELLY, TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred with CAVANAGH, J.

WEAVER, C.J. I concur in the result, but write separately because I disagree with the majority's unnecessarily broad holding that, as a matter of law, income disparity between the parties is not an appropriate reason for departing from the applicable child support formula. Rather, I would reverse solely on the basis of the friend of the court's error, which went uncorrected by the trial judge.

In preparing its recommendation, the friend of the court proceeded as if this case involved sole custody, rather than shared custody.[1] The friend of the court mistakenly made a recommendation based on the sole custody guidelines. At the hearing on the petition Mr. Burba objected to the recommendation, pointing out that he and Mrs. Burba shared custody. Instead of admitting the error, the friend of the court attorney stated that the friend of the court had a policy of not

---

[1] It is clear from the recommendation itself that the friend of the court incorrectly believed that this was a sole custody situation. The recommendation says that it is based on the guidelines, rather than a deviation from them. Further, the recommendation provides for a fifty percent abatement when the minor child spends eight consecutive nights with the parent; the Michigan Child Support Formula Manual (West, 1999) states that "Parenting time abatement should *not* be used in conjunction with the shared economic responsibility formula because that formula contemplates substantial economic sharing and the formula has already accounted for time spent by the child[ren] in both households." § IV(C), p 27.

using the shared custody guidelines when there was a
large disparity in income between the parties. How-
ever, in its amicus curiae brief, the Washtenaw
County Friend of the Court has assured this Court
that it does not have a policy of applying the incor-
rect guidelines, under any circumstances. Instead of
remanding to the referee for a recommendation based
on accurate information, the trial court proceeded
with the hearing, ultimately adopting a support pay-
ment that was in excess of the support levels recom-
mended by the formulas for shared custody. I would
reverse and remand for further proceedings because
the trial court did not have the proper recommenda-
tion before it; thus, I agree with the majority's result.

However, unlike the majority, I would not hold that
the trial court is not allowed to consider the parties'
disparity of income in determining whether the appli-
cation of the child support formula would be "unjust
or inappropriate," in accordance with MCL 552.17(2);
MSA 25.97(2).[2] The majority incorrectly asserts that

---

[2]   MCL 552.17(2); MSA 25.97(2) provides:

   Except as otherwise provided in this section, the court shall
order support in an amount determined by application of the child
support formula developed by the state friend of the court bureau.
The court may enter an order that deviates from the formula if the
court determines from the facts of the case that application of the
child support formula would be unjust or inappropriate and sets
forth in writing or on the record all of the following:
   (a) The support amount determined by application of the child
support formula.
   (b) How the support order deviates from the child support
formula.
   (c) The value of property or other support awarded in lieu of the
payment of child support, if applicable.
   (d) The reasons why application of the child support formula
would be unjust or inappropriate in the case.

because the parties' income was a factor when the support level was initially set by the formula, it cannot not be considered when deciding whether the application of the formula was unjust or inappropriate. This is the first time this Court has addressed what factors may be considered in determining whether application of the child support formula is unjust or inappropriate;[3] I regret that the only guidance the majority offers is that the parties' disparity of income cannot be considered. The logic of the majority's opinion[4] would require it to hold that *none* of the factors relied upon in the Child Support Formula Manual (West, 1999) can be used in making the MCL 552.17(2)(d); MSA 25.97(2)(d) "unjust and inappropriate" analysis. The majority's interpretation would preclude the courts from considering any of the factors taken into account in the Child Support Formula Manual, including parental income, family size, the ages of the children,[5] child care expenses,[6] and the existence of other minor children[7] or stepchildren.[8] Such a restriction would improperly fetter the trial judge—a result not required by either the statutes or the Child Support Formula Manual. Therefore, we should not hold, as a matter of law, that the trial

---

[3] The phrase "unjust or inappropriate" recurs in MCL 552.16(2); MSA 25.96(2), as well.

[4] The majority contends that because the parents' income is one of the factors used in the formula to set the level of child support, considering income disparity as a factor rendering the formula unjust or inappropriate would be "repugnant to the Legislature's intent that income be dealt with as it is dealt with by the formula," and would amount to a "double dipping." *Ante*, p 648.

[5] See the Michigan Child Support Formula Manual, p vi.

[6] *Id.*, p 29.

[7] *Id.*, p 11.

[8] *Id.*, p 12.

court cannot consider income disparity when determining whether the application of the formula was unjust or inappropriate.

I would reverse and remand because the friend of the court report was based on inaccurate assumptions.