*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LANA LORENCZ-KRELL,

      Plaintiff-Appellee/Cross-Appellant,

v

TREVOR AARON KRELL,

      Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
July 21, 2022

No. 356764
Charlevoix Circuit Court
Family Division
LC No. 18-060526-DM

LANA LORENCZ-KRELL,

      Plaintiff-Appellee,

v

TREVOR AARON KRELL,

      Defendant-Appellant.

No. 358506
Charlevoix Circuit Court
Family Division
LC No. 18-060526-DM

Before: SAWYER, P.J., and LETICA and PATEL, JJ.

PER CURIAM.

In Docket No. 356764, defendant, Trevor Aaron Krell, appeals as of right a child support order entered following a bench trial and judgment in this divorce action. Defendant also contests the award of spousal support ordered in favor of plaintiff, Lana Lorencz-Krell. Plaintiff cross-appeals, contending that the trial court should have ordered a longer duration of spousal support. In Docket No. 358506, defendant appeals by delayed leave granted[1] an order granting plaintiff appellate attorney fees. We affirm in both appeals.

---

[1] *Lorencz-Krell v Krell*, unpublished order of the Court of Appeals, entered January 13, 2022 (Docket No. 358506). This order also consolidated the appeals.

# I. BASIC FACTS AND PROCEDURAL HISTORY

The parties were romantically involved in the late 1990s, and plaintiff became pregnant with the couple's son. After the birth of their son, they married. Plaintiff later gave birth to the couple's daughter. During the marriage, defendant maintained steady employment with DTE Energy. His base salary of approximately $84,000 was increased to over $100,000 in light of overtime hours. Plaintiff worked various jobs during the marriage. She operated a daycare in their home, worked at a salon, waitressed in the evenings, and worked as a cosmetologist from home. Eventually, plaintiff began working at the children's school and obtained a food services director position earning $36,000 a year.

Despite the disparity in incomes, plaintiff testified that defendant designated what bills plaintiff was responsible for, she had to provide receipts, and she was required to ask for additional funds if necessary. Contrary to plaintiff's wishes, defendant expended money on snowmobiles, vehicles, and other items for his activities. Although the couple married in 2002, they did not jointly merge their finances until 2017. Plaintiff opined that defendant had a problem with drinking alcohol to excess. She characterized him as verbally abusive and testified that he taught their children to lie and cheat. For example, when registering vehicles, defendant misrepresented the sale price of two vehicles to avoid the payment of taxes.[2] Additionally, defendant misrepresented damages to a pontoon boat and a snowmobile in order to obtain insurance benefits. Plaintiff also testified that defendant made inappropriate and disrespectful comments in front of and to the children. She averred that she was primarily responsible for attending to the children's needs and welfare. Plaintiff indicated that defendant was interested in his children only when they engaged in activities in which he shared an interest, such as snowmobiling.

Plaintiff testified that she wished to remain in the marital home and to be the primary physical custodian for the couple's minor daughter.[3] Additionally, plaintiff was completing college courses to obtain a better job. She noted that her salary would be reduced significantly because she would need benefits that she currently had from defendant's insurance. Plaintiff requested spousal support until she could earn a higher wage. She sought approximately $3,000 in monthly spousal support for an 8 to 10-year period in light of the nearly 18-year marriage. Plaintiff testified that defendant belittled her and advised that he would not pay her any support.

Defendant acknowledged that he earned $117,000 in 2019 but testified that his wages would be significantly reduced because of changes at work. Specifically, he opined that overtime hours that buttressed his $84,000 base salary would not be available because of the pandemic and changes made by his employer. Defendant wished to remain in the marital home, citing a requirement that he had to live within a specific distance of his employment. He testified to

---

[2] Plaintiff acknowledged that she underreported her cosmetology earnings but asserted that it was at defendant's direction.

[3] The parties' daughter turned 17 while the divorce proceeding was pending. The parties' son was over the age of 18.

securing the necessary financing to purchase plaintiff's interest in the home. Defendant also wished to be the primary physical custodian of their minor daughter.

Defendant denied that he had a problem with alcohol and asserted that he was required to randomly test for alcohol and drugs for his employment. Nevertheless, he acknowledged that he had to refuse overtime hours because of drinking. Defendant also denied that he refused to pay any support to plaintiff and that his request for physical custody of the couple's daughter was to avoid paying child support. Defendant admitted that he violated the trial court's mutual restraining order when he removed his paycheck and other funds from the joint account and opened a new bank account. Defendant acknowledged that he rolled a snowmobile down a hill to submit an insurance claim and received $10,600 from insurance for damage to a pontoon boat that he was able to have repaired in exchange for a case of beer. Defendant admitted that he purchased his truck for $24,000 but represented that he paid $3,000 to the Secretary of State to avoid the payment of taxes.

The trial court found that the statutory grounds to warrant the entry of a judgment of divorce, MCL 552.6(3), were satisfied. The trial court examined the child custody factors, considered the preference of the daughter,[4] and awarded primary physical custody to plaintiff. It referred the child support calculation to the Friend of the Court (FOC). The trial court then considered the parties' assets, the valuations, the marital debts, and the retirement accounts. After reviewing the factors to consider in rendering a property division, the trial court awarded plaintiff the marital home and delineated the terms for removal of defendant's interest. It also concluded that the lack of liquid assets warranted an award of $2,800 in monthly spousal support to plaintiff for 48 months. The trial court ordered that defendant be held responsible for attorney fees as marital debt for failing to cooperate in good faith throughout the litigation, violating the court's restraining order, and engaging in furtive behavior pertaining to separate accounts and the pension evaluation.

Defendant moved for reconsideration or relief from the divorce judgment and for a stay of the proceedings. Additionally, defendant objected to the monthly child support calculated at $1,082 a month. The trial court denied defendant's motions, citing the failure to timely seek review and to demonstrate entitlement to the requested relief. It also adopted the FOC child support recommendation.

After defendant filed his claim of appeal from the child support order, plaintiff moved for appellate attorney fees. Plaintiff alleged that defendant had failed to make any child or spousal support payments and was over $22,000 in arrears. It was further asserted that plaintiff was unable to make payments on her current attorney fee obligation, and she was unable to access the award from defendant's 401(k) because the qualified domestic relations order was still pending before his employer's plan administrator. Plaintiff submitted that defendant was able to pay for his appellate attorney because of his failure to make any of the court-ordered payments to her. The trial court granted plaintiff's motion for appellate attorney fees.

---

[4] The trial court interviewed the daughter but did not divulge her wishes on the record.

## II. SPOUSAL SUPPORT

Defendant contends that the trial court erred in awarding monthly spousal support of $2,800 for 48 months. On cross-apppeal, plaintiff submits that the trial court erred in limiting the duration of spousal support. We disagree with these challenges.

> We review for clear error a trial court's factual findings relating to the award of spousal support, and we review for an abuse of discretion a trial court's decision regarding spousal support. A finding is clearly erroneous if, after a review of the record, we are left with a definite and firm conviction that the trial court made a mistake. We are not limited to review for clear error when a trial court's finding is derived from erroneous application of law to facts[.] [*Lueck v Lueck*, 328 Mich App 399, 404; 937 NW2d 729 (2019) (citations omitted).]

An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010).

By statute, the court may order spousal support when a party has insufficient resources for support and maintenance. MCL 552.23(1) provides:

> Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party and any children of the marriage who are committed to the care and custody of either party, the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

The *Woodington* Court explained the rationale and factors underlying spousal support:

> The objective of spousal support is to balance the incomes and needs of the parties in a way that will not impoverish either party, and support is to be based on what is just and reasonable under the circumstances of the case. Among the factors that a court should consider are (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the abilities of the parties to work; (4) the source and the amount of property awarded to the parties; (5) the parties' ages; (6) the abilities of the parties to pay support; (7) the present situation of the parties; (8) the needs of the parties; (9) the parties' health; (10) the parties' prior standard of living and whether either is responsible for the support of others; (11) the contributions of the parties to the joint estate; (12) a party's fault in causing the divorce; (13) the effect of cohabitation on a party's financial status; and (14) general principles of equity. [*Woodington*, 288 Mich App at 356 (citation omitted).]

Defendant contends that the trial court abused its discretion in calculating the spousal support award by concluding that defendant's income was $117,000 and by punishing him for committing tax fraud and discovery violations. Defendant's contention is not supported by the record and the trial court's ruling.

The trial court rendered its decision by first reviewing the factors to determine child custody and concluded that plaintiff should be the primary physical custodian of the child. Accordingly, it submitted the issue of child support to the FOC. The trial court then delineated the parties' assets and liabilities. It divided items of property and assigned corresponding valuation. The trial court determined that it would include plaintiff's claim for attorney fees as part of marital debt in light of defendant's "failure to cooperate in good faith throughout the litigation, violation of the court's restraining order . . . furtive behavior, basically threats of hiding money, and generally keeping . . . plaintiff in the dark about the parties' finances, all sort of vague references to hiding money and keeping separate accounts, and then his failure to cooperate in a timely way with regard to pension valuation." The trial court determined that the value of the marital estate was $707,511.09 and sought to award each party $353,755.54.

After dividing the estate, the court addressed spousal support, stating:

> And the next issue is spousal support. And I again note for the record that I have carefully considered the relevant factors, including the past relations and conduct of the parties, the length of the marriage, the ability of the parties to work, the source and the amount of property awarded to the parties, the age of the parties, the ability of the parties to pay spousal support, the present situation of the parties, the needs of the parties, the health of the parties, the prior standard of living of the parties, and the parties' contribution to the joint estate, the parties' fault in causing the divorce and general principles of equity.

> So, I'll cut to the chase and then I'll talk about how I got there. I'm ordering spousal support payable from the defendant to the plaintiff in the amount of $2,800.00 a month for 48 months. And the—I find that the defendant was earning last year $117,000.00 a year, the plaintiff is earning less than $40,000.00 a year. I do find that—you know, the assets award to the plaintiff in this case, you know, are really, unless she wants to start selling the house and/or liquidating a 401(k), which is going to involve taxes and penalties, she doesn't have liquid assets so she definitely needs some financial support.

> And I also find that the defendant does have some fault in the breakdown of the marriage relationship and I find him at fault in the way that he conducted himself throughout the divorce case and basically thumbing his nose at, you know, a citizen's obligation to pay truthful and honest taxes—property and use tax when you buy a vehicle. I mean, the fact that he came—he came in here and said that he committed tax fraud with the state of Michigan to the tune of $23,000.00 because he didn't—he didn't have the money to pay the taxes and then . . . disregarded this court's orders with regard to preserving assets, taking out loans, maintaining the status quo, I mean, he was truly at fault in causing a breakdown.

> . . . Clearly . . . the most valuable asset either party has is truly [defendant's] job. You know, he earns well in excess of $100,0000.00 a year and he's got a nice pension as well he's going to leave with so I do find that the plaintiff is relatively young and she's clearly employable. She's in school trying to better herself and she's even got an arrangement with the Boyne City schools where they

reimburse her for successfully completed classes, so I think that plaintiff's future in the mid-term is bright and I believe all she needs is some rehabilitative spousal support, but she clearly need it at the moment.

So, I do—taking into account all of the factors based on the testimony and the evidence presented I do find that the award of $2,800.00 a month for 48 months is equitable.

Defendant challenged the trial court's spousal support ruling by filing motions for reconsideration and relief from judgment. The trial court declined to grant relief, stating in pertinent part:

It appears that defendant is attempting to seek relief under MCR 2.612(C)(1)(b) [for] "newly discovered evidence." Defendant argues that he has recently learned that his employer, DTE, has sold certain gas field holdings in Northern Michigan, and defendant believes this development could adversely impact his overtime hours in the future. Defendant's argument on this point is speculative and does not warrant relief pursuant to MCR 2.612 at the present time.

The spousal support order in this case may be modified in the future as appropriate upon a showing of change of circumstances. In the event defendant's overtime income in the future is substantially reduced from the level indicated by the proofs at trial, proper procedure would dictate that the defendant file a motion to modify spousal support.[5]

In light of the testimony and documentary evidence, we cannot conclude that the trial court's finding regarding defendant's income was clearly erroneous. Defendant testified that he made $117,000 in 2019 and admitted that he was only guessing regarding what his ultimate 2020 salary would be. Also, the parties' joint tax returns for 2017, 2018, and 2019 were admitted at trial. The 2019 form shows a "wages" amount for defendant of $114,419 and a dividend of $6,415. Defendant also received dividends of over $5,000 in 2017 and 2018. In his motions for reconsideration, relief from judgment, and for stay, defendant stated that his wages for 2020 were $104,675.27. When defendant's dividend payment is included,[6] defendant continued to earn well in excess of $100,000, not the claimed $84,000 base salary, and nearly three times the income earned by plaintiff.[7] Moreover, defendant did not avail himself of the right to move for modification of spousal support on the basis of a reduction in income, as noted by the trial court.

---

[5] The court stated that "the clear proof at trial [was] that defendant's average annual income for the three years preceding the court's decision was $106,570."

[6] These dividends were discussed at trial, and there is no indication that these payments would not continue into the future.

[7] Plaintiff testified that she received nearly an additional $5,000 in salary because she did not accept the benefits offered by her employer. After the divorce, plaintiff would need to use and pay for her employer's benefits.

Under the circumstances, there is no basis for appellate relief with regard to defendant's "income" argument.[8]

Further, it is apparent that the trial court did not impose an award of spousal support premised solely on fault and inappropriate behavior. Although "a party's fault in causing the divorce is a valid consideration in awarding alimony," *Demman v Demman*, 195 Mich App 109, 111; 489 NW2d 161 (1992), the trial court identified all of the factors warranting an award of spousal support, including the lack of liquid assets available to plaintiff. The trial court's statement of fault did not merely pertain to the breakdown of the marriage. Instead, it was noted that defendant engaged in conduct that allowed him to reap a financial reward that he benefited from and that the financial gain coupled with defendant's decisions, partly in violation of the court's order, could not be quantified in the marital estate. When the trial court's ruling is examined in its entirety, it did not inappropriately weigh fault, fraud, and discovery violations when determining spousal support.[9] Accordingly, the trial court did not abuse its discretion.

On cross-appeal, plaintiff asserts that the trial court should have awarded alimony for a longer duration, citing the length of the marriage and the "rule-of-thumb" that the duration of support should be one-third to one-half of the length of the marriage. Further, plaintiff submits that defendant's alcohol and verbal abuse constitute despicable treatment that warrants a longer award. We disagree.

According to the record, the trial court was well aware of the factors used to calculate an award of spousal support and the length of the marriage was a consideration. However, the court appropriately weighed that consideration against "all the other circumstances of the case," MCL 552.23(1); *Loutts v Loutts*, 298 Mich App 21, 31; 826 NW2d 152 (2012). It explained that it awarded spousal support for a relatively short period because plaintiff was a young age and in good health, was furthering her education, and had the ability to earn more in the future. The trial court considered the testimony regarding alcohol and verbal abuse but declined to find that defendant was an alcoholic or that these factors weighed in favor of a longer period of spousal support. In light of all the facts in the present case, including plaintiff's employability, we cannot conclude that the trial court abused its discretion in awarding alimony for only four years.

---

[8] Defendant also notes there are deductions from his pay, such as taxes, but fails to note that plaintiff has the same types of deductions from her pay.

[9] Defendant submits that it was inappropriate to consider violations of discovery and court orders as well as tax fraud because it is not included in the spousal support factors and this behavior was considered when ordering an award of attorney fees. He contends this consideration of fault was disproportionately weighed when rendering the spousal support award. However, when ordering spousal support "all the other circumstances of the case," may be considered. MCL 552.23(1); see also *Loutts v Loutts*, 298 Mich App 21, 31; 826 NW2d 152 (2012) ("[T]he trial court erred by applying a bright-line test and failing to consider the specific facts and circumstances of this case.").

## III. CHILD SUPPORT

Defendant contends that the trial court improperly used an inflated figure for defendant's income to calculate child support. We disagree.

> Generally, this Court reviews child support orders and orders modifying support for an abuse of discretion. Whether the trial court properly acted within the child support guidelines is a question of law that this Court reviews de novo. This Court also reviews questions of statutory construction de novo. Finally, to the extent that the trial court made factual findings in determining the amount of support under the child support formula, those findings are reviewed for clear error. [*Riemer v Johnson*, 311 Mich App 632, 650; 876 NW2d 279 (2015) (quotation marks and citations omitted).]

Child support is set by a formula, with limited exceptions for deviation. See *Burba v Burba*, 461 Mich 637, 642-644; 610 NW2d 873 (2000). The child support calculation was designed to balance the needs of the child with the actual resources of the parent. *Id*. at 642-643. When determining child support, the trial court must comply with the requirements of the child support formula to calculate the parent's obligation unless it determines that application of the formula is unjust or inappropriate under the facts of the case. *Riemer*, 331 Mich App at 650.

Defendant's contention that the trial court improperly considered $117,000 as his income level because the calculation should have been premised on his current income level is not supported by the record. After the bench trial was concluded, the trial court referred the calculation of child support to the FOC. The FOC recommended that defendant pay $1,082 a month. Defendant objected to this recommendation on various grounds, including that he was not expecting to be working as much overtime. At the hearing on defendant's objection, it was determined that defendant's accurate 2020 income had been used for the calculation, and the trial court adopted the FOC recommendation. The child-support recommendation calculation sheet submitted by defendant demonstrates that the FOC used a monthly income of $8,756.51, which amounts to $105,078.12 a year, not the $117,000 he alleges on appeal. Thus, defendant's appellate argument is based on a faulty premise, and reversal is unwarranted.[10]

## IV. APPELLATE ATTORNEY FEES

Defendant contends that the lower court erred by awarding appellate attorney fees to plaintiff. We disagree.

In general, this Court reviews a trial court's award of attorney fees in a divorce action for an abuse of discretion. *Richards v Richards*, 310 Mich App 683, 699; 874 NW2d 704 (2015). "An abuse of discretion occurs when the result falls outside the range of principled outcomes." *Id*. Factual findings underlying an award of attorney fees are reviewed for clear error; the question is

---

[10] Again, in January 2021, defendant filed a motion to stay the proceedings and for reconsideration or relief from judgment, and in the course of this motion, he stated that his wages for 2020 had been $104,675.27. These "wages" would not be inclusive of his regular dividend payment.

whether this Court is left with a definite and firm conviction that a mistake has been made. *Id*. at 700. Any questions of law that may arise are reviewed de novo. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005).

Under the "American rule," attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract. *Id*. By statute, MCL 552.13(1), and court rule, MCR 3.206(D), attorney fees are authorized in domestic-relations cases. MCR 3.206(D) provides:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that:

> (a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay, or

> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules.

The court awarded fees under MCR 3.206(D)(2)(a).

A court has the authority to award appellate attorney fees. *Myland v Myland*, 290 Mich App 691, 703; 804 NW2d 124 (2010); *McIntosh v McIntosh*, 282 Mich App 471, 483; 768 NW2d 325 (2009); *Gates v Gates*, 256 Mich App 420, 439; 664 NW2d 231 (2003). In *Reed*, 265 Mich App at 165-166, this Court stated:

> The party requesting attorney fees bears the burden of proving they were incurred and that they are reasonable. When requested attorney fees are contested, it is incumbent on the trial court to conduct a hearing to determine what services were actually rendered, and the reasonableness of those services. The trial court may not award attorney fees, as apparently occurred here, solely on the basis of what it perceives to be fair or on equitable principles. [Citations omitted.][11]

Defendant contends that the court should not have awarded "prospective" fees. However, defendant filed his claim of appeal. Plaintiff filed a motion for appellate attorney fees because it was necessary to respond to defendant's appeal and appellate counsel required a retainer. Plaintiff's appellate counsel testified at the hearing that his retainer was $12,500. He advised that this fee was in the standard range for family-law appeals in Michigan and in the same range as

---

[11] In light of the published caselaw authorizing an appellate attorney award provided the fees are incurred, we need not address the unpublished authority cited by the parties.

those charged by defendant's appellate attorney. Indeed, defendant effectively triggered the incurrence of plaintiff's appellate attorney fees. It was not speculative that plaintiff would incur the appellate attorney fees in light of defendant's action.

Defendant does not dispute the reasonableness of the retainer fee but submits that the court improperly concluded that he had the ability to pay. Specifically, defendant submits that the awards of support and attorney fees rendered him unable to pay, and plaintiff, essentially basking in her victorious trial court rulings, decided to ask for prospective attorney fees.[12] At the time of the request for appellate attorney fees, there was no indication that plaintiff was living comfortably. Rather, plaintiff alleged that she had not received any child or spousal support from defendant, and she was not yet able to access funds from defendant's 401(k). Moreover, the child support obligation was only applicable for one-year in light of the age of the couple's daughter, and the spousal support was only required for four years. In determining that an award of appellate attorney fees was warranted, the trial court stated:

> [D]efendant earns in excess of $100,000.00 a year and the plaintiff earns less than a third of that amount of money, so I do find that based on the circumstances that the court finds exist presently that the plaintiff does need an award of attorney fees in order to proceed with the—to defend this appeal, and I further find that the retainer of 12,500 . . . is reasonable and appropriate, so I am going to grant the motion and order that the defendant pay immediately $12,500.00 for appellate attorney fees to—in support of the plaintiff's defense of this appeal.

Given the parties' incomes, the additional information that plaintiff had not received any of the court-ordered support payments or monetary assets, and the appellate retainer was necessitated by defendant's claim of appeal, we conclude that the trial court did not abuse its discretion in awarding plaintiff appellate attorney fees.

We affirm in both appeals.

/s/ David H. Sawyer
/s/ Anica Letica
/s/ Sima G. Patel

---

[12] Similarly, in defendant's brief on appeal filed in Docket No. 356764, he asserted that the trial court placed him "in a situation where he is struggling to get by while Plaintiff-Wife is living comfortably."