EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Jackeline Cancel Rivera<br><br>Recurrida<br><br>v.<br><br>Carlos David González Ruiz<br><br>Peticionario | Certiorari<br><br>2018 TSPR 94<br><br>200 DPR ____ |

Número del Caso: CC-2017-226

Fecha: 16 de mayo de 2018

Tribunal de Apelaciones:

 Región Judicial de Bayamón y Carolina

Abogado de la parte peticionaria:

 Lcdo. Harry Brugman Mercado

Abogada de la parte recurrida:

 Lcda. Leticia Pabón Ortiz

Materia: Derecho de familia: Jurisdicción de los tribunales de Puerto Rico para modificar un decreto de alimentos y relaciones paternofiliales emitido por un tribunal de otro estado de Estados Unidos.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jackeline Cancel Rivera

    Recurrida

        v.                CC-2017-0226         *Certiorari*

Carlos David González Ruiz

    Peticionario

EL JUEZ ASOCIADO SEÑOR RIVERA GARCÍA emitió la opinión del Tribunal.

En San Juan, Puerto Rico, a 16 de mayo de 2018.

Nos corresponde resolver una controversia en la que hay dos jurisdicciones en conflicto. Específicamente debemos auscultar si los tribunales de Puerto Rico tienen jurisdicción para modificar un decreto de alimentos y relaciones paternofiliales de otro estado en el que éste último se reservó la jurisdicción sobre el caso y las partes. En otros términos, si a pesar de existir un decreto original de ese estado, los foros locales tienen jurisdicción para modificarlo por el hecho de que los menores han residido en Puerto Rico por un periodo de cinco años.

Por los fundamentos que elaboramos a continuación, resolvemos en la negativa. Los tribunales de Puerto Rico tienen jurisdicción para modificar un decreto de alimentos y relaciones paternofiliales de otro estado siempre y cuando cumplan con los requisitos establecidos en el *Parental Kidnapping Prevention Act* (PKPA) y la *Ley uniforme interesatatal sobre alimentos para la familia*, Ley Núm. 3-2015.

## I

El Sr. Carlos David González Ruiz (peticionario o señor González Ruiz) y la Sra. Jackeline Cancel Rivera (señora Cancel Rivera o recurrida) se divorciaron el 23 de junio de 2011, mediante *Judgment of Divorce* (sentencia de divorcio) ante el Tribunal del Circuito para el Condado de Macom, Michigan, Estados Unidos.[1] La sentencia de divorcio estipuló, entre otros asuntos, que las partes tendrían custodia legal compartida (*joint legal custody*) sobre sus dos hijos menores de edad. Por existir un acuerdo entre las partes, dispuso que el domicilio de estos sería con la recurrida en Puerto Rico.[2] Asimismo, estableció que el pago de pensión alimentaria, según las guías mandatorias para el cálculo de pensión alimentaria de Michigan, sería de $ 416 mensuales.

---

[1] *Judgment of Divorce,* Apéndice de la Petición de *certiorari*, págs. 118-127.

[2] *Íd.*, págs. 119-122.

No obstante, conforme a la discreción que le otorgan las leyes de ese estado, aplicó el mecanismo del desvío (deviation award) y determinó que la suma correspondiente se destinaría a los gastos de viaje y transportación en los que el peticionario tendría que incurrir para relacionarse con los menores. Instituyó que durante los recesos de verano y navidad los menores viajarían a la residencia del padre en Michigan y durante el receso de Semana Santa el padre viajaría a Puerto Rico para estar con ellos.[3] Finalmente, en la referida sentencia el tribunal se reservó y retuvo la jurisdicción sobre los asuntos dispuestos en la sentencia y las partes, para asegurar su cumplimiento.[4]

Una vez en Puerto Rico, la señora Cancel Rivera acudió a la Administración para el Sustento de Menores (ASUME) para solicitar una pensión alimentaria. En noviembre de 2011, mediante Orden, la agencia impuso al peticionario el pago de $638.85. El 6 de mayo de 2014 ASUME celebró una vista de objeción de deuda que solicitó el peticionario. Allí la agencia emitió una *Orden*, notificada el 30 de mayo de 2014, mediante la cual declaró con lugar la solicitud de desestimación presentada por el señor González Ruiz por falta de jurisdicción.[5] Ello, por existir una orden del Tribunal de Michigan que estableció que por acuerdo entre las partes, "[p]laintiff shall be responsible for the cost

---

[3] *Íd.*, págs. 122-123.

[4] *Íd.*, pág. 126.

[5] *Orden*, Apéndice de la Petición de *certiorari,* págs. 100-105.

of the transportation of the minor children to and from Puerto Rico for his parenting time. In lieu of the considerable expense of this transportation, Defendant shall not receive any child support from Plaintiff". Por lo tanto, dejó sin efecto la pensión alimentaria fijada por falta de jurisdicción. Fundamentó su decisión en que la Ley Núm. 180-1997, conocida como la *Ley Uniforme Interestatal de Alimentos entre Parientes*, según enmendada, tiene el propósito de evitar la multiplicidad de órdenes.[6]

Por otro lado, el 22 de diciembre de 2015, el peticionario presentó ante el Tribunal de Michigan una moción sobre incumplimiento de orden en contra de la recurrida.[7] Indicó que ésta incumplió los acuerdos de la sentencia de divorcio en cuanto las relaciones paternofiliales establecidas para que los menores viajaran a relacionarse con su padre en Michigan, donde éste último reside.

El 15 de enero de 2016, se celebró una vista a la que comparecieron ambas partes para atender la moción presentada por el peticionario. El Tribunal de Michigan, ordenó a la señora Cancel Rivera a no interferir en las relaciones paternofiliales decretadas. De lo contrario, le apercibió que tendría que presentarse ante la jueza que presidió la vista y mostrar causa por lo cual el tribunal no debía

---

[6] *Íd.*, pág. 129.

[7] *Motion and/or Order to Show Cause*, Apéndice de la Petición de *certiorari*, pág. 134.

imponerle una orden de desacato.[8] Finalmente, reiteró su jurisdicción y dispuso que todas las órdenes emitidas por el referido tribunal permanecerían en efecto y válidas hasta que se dispusiera lo contrario.[9]

Así las cosas, una vez la recurrida regresó a Puerto Rico, el 25 de agosto de 2016 presentó una demanda sobre fijación de relaciones paternofiliales y alimentos ante el Tribunal de Primera Instancia. Alegó, entre otras cosas, que la sentencia de divorcio del estado de Michigan era absurda al conceder relaciones paternofiliales durante las vacaciones de verano y navidad sin que la madre tenga oportunidad de compartir con los menores durante esos periodos. Solicitó una pensión alimentaria de $ 1,000 para el sustento de los menores, y que el padre costeara los gastos de viaje y los gastos escolares dos veces al año para el regreso a clases.

El 12 de octubre de 2016, el peticionario presentó una *Comparecencia Especial y Solicitud de Desestimación* mediante la cual, sin someterse a la jurisdicción, solicitó que se tomara conocimiento de la sentencia de divorcio emitida el 23 de junio de 2011 por el Tribunal de Michigan. Arguyó que éste último se reservó la jurisdicción, por lo que procedía la desestimación de la demanda.

---

[8] En la Orden la Jueza señaló que si la señora Cancel Rivera cooperaba para que los menores se relacionaran con su padre y no intervenía en las relaciones paternofiliales no tendría que comparecer a la corte.

[9] Específicamente, el tribunal señaló que "[a]ll other Orders not in conflict remain in full force and effect until further Order of this Honorable Court". *Íd.*, pág. 138.

El 2 de diciembre de 2016, el Tribunal de Primera Instancia notificó una resolución en la que declaró *no ha lugar* la solicitud de desestimación. El foro primario entendió que como el peticionario consintió a que el domicilio de los menores fuera en Puerto Rico, tenía jurisdicción para atender los asuntos de alimentos y filiación de los menores. Ello, al amparo de la Sección 1301(a)(5) de la *Ley Uniforme Interestatal sobre Alimentos para la Familia* (LUIAF).[10] En consecuencia, autorizó los emplazamientos por edicto. [11]

En desacuerdo, el 12 de diciembre de 2016 el peticionario presentó reconsideración. Entre otras cosas, alegó que nunca consintió a que el domicilio de los menores fuera Puerto Rico y que el Tribunal de Michigan mantenía jurisdicción continua al amparo de la *Uniform Child Custody and Jurisdiction Enforcement Act* (UCCJEA).[12]

El 23 de diciembre de 2016, la señora Cancel Rivera presentó una moción para informar que el 16 de diciembre de 2016 emplazó al peticionario mediante edicto. El 9 de enero de 2017 el Tribunal de Primera Instancia notificó una resolución y declaró *no ha lugar* la solicitud de reconsideración. El foro primario reiteró los fundamentos

---

[10] 8 LPRA sec. 1301. Cabe destacar que uno de los fundamentos para que el tribunal ejerza la jurisdicción sobre un individuo no residente en un procedimiento al momento de establecer o ejecutar una orden de pensión alimentaria es que "el menor resid[a] en Puerto Rico como resultado de actos o directrices del individuo".

[11] *Íd.*, págs. 61-62.

[12] *Íd.*, págs. 63-64.

esbozados en su resolución notificada el 2 de diciembre de 2016 y añadió lo siguiente:

> El Tribunal reconoce que existe entre las partes de este caso un decreto original sobre alimentos y relaciones paterno filiales en el "Judgement of Divorce" (Sentencia de Divorcio) emitida en el estado de Michigan. No obstante, resolvemos que Puerto Rico adquirió calidad de estado-hogar de los menores, ya que éstos han residido en esta jurisdicción por cinco (5) años. El Tribunal entiende que en el mejor interés de los menores, se debe atender el caso en la jurisdicción de Puerto Rico porque la evidencia sustancial sobre el mismo existe en nuestra jurisdicción. La evidencia sustancial sobre el cuidado, protección, educación y relaciones personales presentes y futuras de los menores está en Puerto Rico; y por eso entendemos que es el foro más adecuado para adjudicar todo lo relacionado a los menores […].[13] (Énfasis nuestro).

El 11 de enero de 2017, el foro primario notificó una orden por la cual se dio por enterado del emplazamiento por edicto, señaló una vista para el 9 de febrero de 2017 y refirió el caso ante la Examinadora de Pensiones Alimentaria. Posteriormente, el 26 de enero de 2017, notificó una orden mediante la cual atendió una solicitud de renuncia de representación legal, anotó la rebeldía al peticionario e indicó que la vista se celebraría en la fecha indicada.[14]

Inconforme, el 3 de febrero de 2017 el peticionario presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. Sostuvo que el foro primario incidió al determinar que tenía jurisdicción para atender el petitorio

---

[13] *Íd.*, pág. 116.

[14] *Íd.*, pág. 181.

de relaciones paternofiliales y alimentos, aun cuando existía un decreto original del estado de Michigan en el que el tribunal retuvo y ejerció la jurisdicción continua sobre la materia y las partes en el litigio. Además, señaló que el foro erró al actuar en claro abuso de discreción en el momento en que autorizó el emplazamiento por edicto y declaró al peticionario en rebeldía, a pesar de que existían argumentos sobre la falta de jurisdicción. El peticionario acompañó con su petición una moción en auxilio de jurisdicción. La recurrida se opuso. El 8 de febrero de 2017 el Tribunal de Apelaciones notificó inmediatamente por medios electrónicos una resolución para ordenar la paralización de los procedimientos ante el foro primario hasta tanto el foro apelativo intermedio resolviera el recurso.[15]

El 21 de febrero de 2017 el señor González Ruiz, sin someterse a la jurisdicción, presentó una moción de reconsideración y solicitó al foro intermedio la modificación de la determinación que hizo en cuanto a que el peticionario se había sometido voluntariamente a la jurisdicción del tribunal.[16] No obstante, la misma fue declarada *no ha lugar* mediante resolución notificada el 28 de febrero de 2017.

---

[15] Se notificó posteriormente el 9 de febrero de 2017, mediante el formulario OAT-750. El Tribunal de Apelaciones advirtió al peticionario que se había sometido voluntariamente a la jurisdicción de dicho foro ya que en su escrito planteó no solo asuntos jurisdiccionales sino también aquellos relacionados a los méritos del caso. *Resolución*, Apéndice de la Petición de *certiorari*, págs. 250-252.

[16] *Íd.*, págs. 253-258.

Así las cosas, el 2 de marzo de 2017, el foro apelativo intermedio confirmó la resolución de Tribunal de Primera Instancia y devolvió el caso para la continuación de los procedimientos. Concluyó que los menores habían residido en Puerto Rico por más de 5 años y que no se había fijado una pensión alimentaria. Entendió que en el mejor interés de los menores, el caso de fijación de relaciones paterno-filiales y alimentos se debía atender en Puerto Rico. Fundamentó su decisión en el inciso (c) de la Sección 1738A del *Parental Kidnapping Prevention Act* (PKPA), que según interpretó, otorga preferencia jurisdiccional al estado de residencia del menor.[17]

En desacuerdo aún, el 27 de marzo de 2017, el peticionario acudió ante nos mediante recurso de *certiorari*. Señaló los errores siguientes:

> Erró el Tribunal de Apelaciones al validar la actuación del Tribunal de Primera Instancia de adquirir jurisdicción sobre la materia a pesar de que existe una orden final y firme emitida por la Administración para el Sustento de Menores entre las mismas partes que declara que no hay jurisdicción y no dar entera fe y crédito a la sentencia del estado de Michigan.
>
> Erró el Tribunal de Apelaciones al determinar que el [sic] se perfeccionó correctamente el procedimiento de emplazamiento por edicto ante el TPI y consiguientemente la anotación de rebeldía al peticionario.
>
> Erró el Tribunal de Apelaciones al determinar que el peticionario se sometió voluntariamente a la jurisdicción del tribunal.

---

[17] 28 USC sec. 1738A.

Examinados los planteamientos y con el beneficio de la comparecencia de ambas partes, resolvemos.


## II

### A. *Jurisdicción, jurisdicción sobre la materia y sobre la persona*

La jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias.[18] Cuando hablamos de jurisdicción sobre la materia, nos referimos a la capacidad de un tribunal para atender y resolver una controversia sobre un aspecto legal. Si no hay jurisdicción sobre la materia, el tribunal está obligado a desestimar el caso.[19]

Por otra parte, el emplazamiento es la forma de adquirir jurisdicción sobre la persona contra la que se reclama en un proceso judicial. Así, luego que se presenta la demanda, se expide el emplazamiento y con su posterior diligenciamiento, el tribunal adquiere jurisdicción sobre la persona del demandado. Ahora bien, la comparecencia voluntaria de la parte demandada suple la omisión del emplazamiento. De manera que ésta se coloca al alcance del tribunal para que atienda el recurso presentado y resuelva la controversia en sus méritos.[20] De lo contrario, el tribunal no tiene jurisdicción sobre la persona, a menos que alguna disposición en ley lo exceptúe.

---

[18] *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 708 (2014).

[19] *Shell v. Srio. Hacienda*, 187 DPR 109, 122 (2012).

[20] *Franco v. Corte*, 71 DPR 687 (1950).

**B. *Parental Kidnapping Prevention Act (PKPA) y la Full Faith and Credit for Child Support Orders Act* (FFCCSOA)**

La *Parental Kidnapping Prevention Act* es una ley federal promulgada en 1980 por el Congreso de Estados Unidos. Su propósito primordial es facilitar la ejecución de los decretos de los estados sobre custodia y derechos de visita, y prevenir la competencia y el conflicto interjurisdiccional.[21] Esta ley rige expresamente en todos los estados de Estados Unidos, en los territorios y sus posesiones –incluyendo a Puerto Rico– y en el Distrito de Columbia.[22] Además, ocupa el campo en materia de determinaciones interestatales de custodia. Por ello, cuando existe un conflicto interjurisdiccional respecto a decretos de custodia entre los estados, el PKPA ocupa el campo incluso sobre las leyes locales como la LUIAF.[23]

Por su parte, la *Full Faith and Credit for Child Support Orders Act* (FFCCSOA) es una ley que se promulgó en 1994 con el propósito de que ningún estado pueda modificar una determinación de pensión alimentaria que sea compatible con las leyes del estado en que se emite, a menos que se cumpla con ciertos requisitos jurisdiccionales.[24] A tales

---

[21] Pub. L. No. 96-611, secs. 6-10, 94 Stat. 3568-3573 (1980). Véase, además, *Santiago v. Kabuka*, 166 DPR 526, 534 (2005).

[22] 28 USC sec. 1738A (b)(8); *Santiago v. Kabuka, supra*.

[23] *Íd.*

[24] Congressional Findings and Declaration of Purpose, en US Government Publishing Office, https://www.gpo.gov/fdsys/granule/USCODE-2011-title28/USCODE-2011-title28-partV-chap115-sec1738B (última visita, 10 de mayo de 2018).

efectos, la FFCCSOA requiere que se cumpla con el dictamen original de pensión alimentaria que establece el estado emisor.

Ambas leyes están codificadas bajo el mismo título. La Sección 8 de la PKPA se codificó bajo el título 28 del United States Code, en la sección 1738A y se le nombró *Full Faith and Credit Given to Child Custody Determinations* y la *Full Faith and Credit for Child Support Orders Act* se codificó en la sección 1738B. Así, las secciones 1738A y 1738B establecen que los tribunales de Puerto Rico deben reconocer entera fe y crédito a los decretos sobre custodia y pensión alimentaria de otros estados o jurisdicciones, siempre que sean compatibles con estas disposiciones y que el foro original mantenga jurisdicción sobre la materia. Por cuanto, debemos examinar esta controversia a la luz de la PKPA y la FFCCSOA.

### 1. *Dictámenes sobre custodia y el derecho de visita*

La Sección 1738A, establece lo relacionado a las determinaciones de custodia o el derecho de visita. El inciso (a) de la ley establece que la autoridad competente de cada estado debe ejecutar las determinaciones de custodia o derechos de visita de un tribunal emisor conforme a las disposiciones de la PKPA. Advierte que éstas no pueden ser modificadas a menos que se cumpla con las subsecciones (f), (g) y (h).[25]

---

[25] 28 USC sec. 1738A, inciso (a).

Una determinación de custodia o derecho de visita es compatible con la PKPA únicamente si el tribunal emisor tenía jurisdicción para ello, conforme a las leyes de su estado y si se cumple con **una** de las condiciones siguientes:

> **(A) Ese estado (i) es el estado de residencia del menor a la fecha en que comenzaron los procedimientos, o (ii) ha sido el estado de residencia del menor seis meses antes de la fecha en que comenzaron los procedimientos y el menor se encuentra fuera del estado porque ha sido trasladado o retenido por una de las partes o por otras razones, y una de las partes aún reside en el estado que emitió el decreto;**
>
> (B) (i) surge que ningún otro estado tiene jurisdicción bajo el párrafo (A), y (ii) para el mejor bienestar del menor, el tribunal de dicho estado asume jurisdicción debido a que (I) el menor y sus padres, o el menor y al menos uno de los litigantes, tiene contactos significativos con el estado, más allá de la mera presencia física en el mismo, y (II) está disponible en ese estado evidencia sustancial relativa al cuidado, protección, entrenamiento y relaciones personales presentes o futuras del menor;
>
> (C) el menor está físicamente presente en ese estado, y (i) ha sido abandonado, o (ii) existe una emergencia que requiera su protección porque el niño, un hermano o uno de sus padres, ha recibido amenazas o ha estado expuesto a maltrato o abuso;
>
> (D) (i) surge que no hay otro estado con jurisdicción bajo los párrafos (A), (B), (C) o (E), u otro estado ha declinado ejercer jurisdicción bajo el fundamento de que el estado cuya jurisdicción está en controversia es el foro más apropiado para determinar la custodia del menor, y (ii) es para el mejor bienestar del menor que ese tribunal asuma jurisdicción; o
>
> (E) el tribunal tiene jurisdicción continua conforme al inciso (d) de esta sección. 28 USC sec. 1738A(c). (Traducción de este Tribunal en el caso *Santiago v. Kabuka*, *supra*, pág. 535). (Énfasis suplido).

Para que un tribunal conserve su jurisdicción continua debe cumplir con los siguientes requisitos: (1) que el decreto original de custodia sea compatible con las disposiciones de la PKPA; (2) que el foro original mantenga jurisdicción bajo sus propias leyes, y (3) que dicho foro continúe siendo el estado de residencia del menor o al menos de una de las partes.[26]

De manera que la PKPA "establece un esquema de preferencia jurisdiccional mediante el cual se favorece el estado de residencia del menor como el foro que mejor está capacitado para atender las cuestiones de custodia del menor".[27] Es decir, se le concede un trato preferencial al estado de residencia del menor porque se entiende que es el que puede determinar mejor lo que es más beneficioso para el niño. Es allí en donde el niño ha hecho amistades, asiste a la escuela, recibe asistencia médica y su vida se ha desenvuelto.[28] Por lo tanto, se entiende que en el estado residencia del menor es el lugar

> donde con mayor probabilidad está disponible la evidencia que se requiere para hacer una adecuada determinación de custodia, una que tome en cuenta lo que es más conveniente para el menor. **De manera que de existir conflicto con respecto a cuál es el requisito jurisdiccional aplicable de acuerdo al P.K.P.A., siempre deberá prevalecer el del estado residencia del menor.**[29] (Énfasis suplido).

---

[26] 28 USC sec. 1738 A (d).

[27] *Santiago v. Kabuka*, *supra*, pág. 536.

[28] *Ortega, Jr. v. Morales Ortega*, 131 DPR 783, 792 (1992).

[29] *Íd.*

Es preciso aclarar que para propósitos de la custodia o derechos de visita la ley define el concepto de estado de residencia (*home State*) como "aquel estado o jurisdicción en la que el menor haya vivido con uno o ambos padres, o con un tutor, al menos durante seis meses consecutivos antes de la fecha de inicio de los procedimientos de custodia o fijación de derechos de visita".[30]

Al citar una sentencia de un estado de forma ilustrativa, sostuvimos que, según la PKPA, la jurisdicción del "estado de residencia" tiene prioridad sobre las otras consideraciones. Y, añadimos que

> [n]o será sino hasta que se determine que ningún otro estado podría asumir jurisdicción a la luz de la sección relativa al "estado de residencia", que se tomará en consideración el criterio de los mejores intereses del menor o el que otro estado haya declinado asumir jurisdicción, a menos que el menor se encuentre en este estado y exista una situación de abandono o de emergencia.[31]

A pesar de lo anterior, en *Santiago v. Kabuka*, *supra*, este Tribunal determinó lo siguiente:

> (. . .)[S]i bien el PKPA da preferencia al estado de residencia del menor sobre cualquier otra jurisdicción, la ley confiere jurisdicción continua al estado o foro que haya emitido un decreto original de custodia para que haga valer o revise sus determinaciones originales. 28 U.S.C.A. sec. 1738A(d). **Debe entenderse que ante la existencia de un decreto original que se ajuste a las disposiciones del estatuto, la jurisdicción continua es el criterio principal, aun cuando ésta no sea la jurisdicción de residencia del menor.** Moraza Choisne, *supra*, pág. 319 ("In these actions

---

[30] 28 USC sec. 1738A, inciso (b)(4). (Traducción nuestra).

[31] *Ortega, Jr. v. Morales Ortega*, *supra*, pág. 792.

the jurisdictional basis [providing continuous jurisdiction] is hierarchically superior even to home state jurisdiction").

Para que un foro mantenga jurisdicción continua es necesario que se cumplan tres requisitos: *un decreto original de custodia compatible con las disposiciones del PKPA; que el foro original mantenga jurisdicción bajo sus propias leyes, y que dicho foro continúe siendo el estado de residencia del menor o al menos de una de las partes.* 28 U.S.C.A. sec. 1738A(d).[32] (Bastardillas en el original y énfasis suplido).

Así, en *Collazo Dragoni v. Noceda González*, 2017 TSPR 120, 198 DPR __ (2017), al atender una controversia sobre la jerarquía jurisdiccional que establece la PKPA, establecimos que si el dictamen original de custodia se emitió conforme a los parámetros de la PKPA, los tribunales de otro estado no podrán modificar ese dictamen. Por lo tanto, allí reiteramos que la jurisdicción continua es la norma que prevalece sobre el estado de residencia del menor, mientras se cumpla con las disposiciones y las bases jurisdiccionales del estatuto federal y que ese estado, en donde se emitió el decreto original, se mantenga como el estado de residencia del menor o una de las partes.

**2. Dictámenes sobre pensión alimentaria**

Respecto a los decretos de alimentos, la norma general es que los tribunales de cada estado están obligados a ejecutar una orden de pensión alimentaria que haya sido

---

[32] *Santiago v. Kabuka*, *supra*, pág. 536.

emitida por otro estado conforme a las disposiciones y los parámetros establecidos en la FFCCSOA.[33]

Una orden de pensión es consistente con los parámetros de la FFCCSOA si cumple con lo siguiente:

(1) a court that makes the order, pursuant to the laws of the State in which the court is located and subsections (e), (f), and (g)—

(A) has subject matter jurisdiction to hear the matter and enter such an order; and

(B) has personal jurisdiction over the contestants; and

(2) reasonable notice and opportunity to be heard is given to the contestants.

En otros términos, si el tribunal emisor actuó con jurisdicción conforme a las leyes del estado, tenía jurisdicción sobre las partes y cumplió con el debido proceso de ley en cuanto a la notificación y el derecho que tienen las partes de ser oídas al momento de emitir la orden, entonces el decreto se hizo conforme a las disposiciones de la FFCCSOA.

Ahora bien, un tribunal que emitió una orden de pensión alimentaria tendrá jurisdicción continua y exclusiva sobre la orden de pensión alimentaria si el estado emisor es también el lugar de residencia del menor (child's State) **o de alguna de las partes; o si las partes han prestado su consentimiento en récord o corte abierta para que dicho tribunal mantenga el ejercicio de la jurisdicción para**

---

[33] 28 USC sec. 1738B(a).

**modificar la orden cuando sea necesario.** Ello, a menos que un tribunal de otro estado haya modificado la orden pero para ello tiene que haber cumplido con los requisitos jurisdiccionales y procesales dispuestos en la ley.[34]

De manera que la FFCCSOA otorga autoridad para que un estado pueda modificar una orden de pensión alimentaria de otro estado siempre y cuando estén presentes los requisitos siguientes: (1) que la orden del tribunal emisor esté registrada, (2) que el tribunal tenga jurisdicción para realizar la modificación y (3) que el tribunal emisor ya no ostente la jurisdicción continua y exclusiva de la referida orden de pensión alimentaria porque el estado emisor ya no es la residencia del menor ni el estado de residencia de alguna de las partes. Además, se requiere que las partes no hayan consentido en récord público o en corte abierta a que el tribunal del estado emisor mantenga el ejercicio de la jurisdicción para modificar la referida orden.[35] En consecuencia, para que un tribunal de otro estado que no es el emisor asuma la jurisdicción continua y exclusiva para modificar una orden de pensión alimentaria de otro estado, las partes tienen que prestar su consentimiento por escrito.[36]

**C. Procedimiento para establecer, ejecutar o modificar una orden de pensión alimentaria conforme a la Ley Uniforme Interestatal sobre Alimentos para la Familia**

---

[34] *Íd.*, inciso (d): *Continuing Jurisdiction.*

[35] *Íd.*, inciso(e): *Authority to Modify Orders.*

[36] *Íd.*

Con miras a establecer uniformidad en el procesamiento de casos de alimentos interestatales, la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 103-2015, conocida como la *Ley Uniforme Interestatal sobre Alimentos para la Familia* (LUIAF).[37] Ello, con el propósito de adoptar en Puerto Rico el modelo de ley conocido como *Uniform Interstate Family Support Act* (UIFSA).[38]

En lo pertinente, la Sección 1301(a) de la LUIAF, dispone cuáles son los fundamentos para que, en un procedimiento para **establecer o ejecutar** una orden de pensión alimentaria, un tribunal de Puerto Rico pueda ejercer jurisdicción sobre un individuo no residente o sobre el tutor o encargado. Así la referida disposición señala que se debe cumplir con alguno de los siguientes:

> (1) El individuo es emplazado o notificado personalmente en Puerto Rico;
>
> (2) el individuo se somete a la jurisdicción de Puerto Rico mediante un consentimiento que consta en récord, mediante la comparecencia voluntaria sin cuestionar la jurisdicción del tribunal o mediante la presentación de una alegación responsiva que tiene el efecto de una renuncia a la defensa de falta de jurisdicción sobre su persona;
>
> (3) el individuo residió en Puerto Rico con el menor;
>
> (4) el individuo residió en Puerto Rico y proveyó gastos prenatales o alimentos para el menor;

---

[37] 8 LPRA sec. 1291.

[38] Según aprobado por la *American Bar Association* el 9 de febrero de 1993 y las enmiendas a dicho modelo adoptadas por la *National Conference of Commissioners on Uniform State Laws*, el 30 de septiembre de 2008.

(5) el menor reside en Puerto Rico como resultado de actos o directrices del individuo;

(6) la persona sostuvo relaciones sexuales en Puerto Rico y el menor pudo haber sido concebido de dicha relación sexual;

(7) el individuo reconoció e inscribió al menor en el Registro Demográfico que está adscrito al Departamento de Salud de Puerto Rico; o

(8) existe cualquier otro fundamento consistente con la Constitución del Estado Libre Asociado de Puerto Rico y la de los Estados Unidos para ejercer jurisdicción sobre la persona del individuo.[39]

Ahora bien, la sección 1301(b) dispone que los tribunales locales **no pueden** utilizar los fundamentos esbozados en el inciso (a) para ejercer su jurisdicción sobre un no residente con el objetivo de **modificar** una orden de pensión alimentaria emitida por otro estado, **a menos que se cumpla con los requisitos establecidos en la sec. 1381 de este título, o, en el caso de una orden extranjera de pensión alimentaria, a menos que se cumpla con los requisitos establecidos en la sec. 1385 de este título.[40]**

Cónsono con lo anterior, la sección 1381 de la LUIAF dispone las instancias en las cuales un tribunal de Puerto Rico puede modificar una orden de pensión alimentaria para un menor emitida en otro estado. Específicamente establece:

(a) Ante el recibo de una petición, un tribunal de Puerto Rico puede modificar una orden de pensión alimentaria para un menor emitida en otro estado y registrada en Puerto Rico, si no es de aplicación

---

[39] 8 LPRA sec. 1301(a).

[40] *Íd.*

la sec. 1383 de este título, y si, luego de notificación y vista, el tribunal determina que:

(1) Los siguientes requisitos se han cumplido:

   **(A) Ni el menor, ni el alimentista ni el alimentante residen en el estado emisor;**

   (B) un peticionario, que no es residente de Puerto Rico, solicita la modificación de la orden; y

   (C) el peticionado está sujeto a la jurisdicción del tribunal de Puerto Rico; **o**

(2) Puerto Rico es la residencia del menor, o una parte que es un individuo está sujeta a la jurisdicción del tribunal de Puerto Rico, **y todas las partes que son individuos han presentado consentimientos que constan en récord en el tribunal emisor** para que un tribunal de Puerto Rico modifique la misma y asuma jurisdicción continua y exclusiva.

(b) La modificación de una orden de pensión alimentaria para un menor que ha sido registrada, está sujeta a los mismos requisitos, procedimientos y defensas que aplican a la modificación de una orden emitida por un tribunal de Puerto Rico, y la orden podrá ser ejecutada y satisfecha de la misma forma.

(c) Un tribunal de Puerto Rico no podrá modificar ningún aspecto de la orden de pensión alimentaria para un menor que no pueda ser modificado al amparo de la ley del estado emisor, incluyendo la duración de la obligación de proveer alimentos. Si dos o más tribunales han emitido órdenes de pensión alimentaria con respecto a un mismo alimentante y un mismo menor, la orden que rige o controla y debe ser reconocida al amparo de la sec. 1307 de este título, establecerá los aspectos de la orden de pensión alimentaria que no son modificables.

(d) En un procedimiento para modificar una orden de pensión alimentaria para un menor, la ley del estado que se determine emitió la orden control inicial, rige la duración de la obligación de proveer alimentos. El cumplimiento del alimentante con la totalidad de su obligación de prestar alimentos, establecida por dicha orden, le impide

a un tribunal de Puerto Rico imponer una obligación de alimentar más extensa.

(e) Tras la emisión de una orden por un tribunal de Puerto Rico mediante la cual se modifica una orden de pensión alimentaria para un menor que fue emitida en otro estado, el tribunal de Puerto Rico se convierte en el tribunal con jurisdicción continua y exclusiva.

(f) A pesar de lo dispuesto en los incisos (a) a la (e) y la sec. 1301(b) de este título, un tribunal de Puerto Rico retiene la jurisdicción para modificar una orden emitida por un tribunal de Puerto Rico si:

(1) Una de las partes reside en otro estado; y

(2) la otra parte reside fuera de los Estados Unidos.[41] (Énfasis suplido).

En otros términos, se requiere que ni las partes ni el menor residan en el estado emisor; que el peticionario, no residente en Puerto Rico, sea quien solicite la modificación de la orden; y que esté sujeto a la jurisdicción del Tribunal de Puerto Rico. En la alternativa, un tribunal de Puerto Rico puede modificar una orden de pensión alimentaria si Puerto Rico es la residencia del menor **o** una parte está sujeta a la jurisdicción de Puerto Rico; **y, además, consta en el récord que <u>todas las partes</u> consintieron** a que el foro local modificara la orden y asumiera jurisdicción continua y exclusiva.[42]

### D. *Desviation award on child support*

En 1988 el Congreso de Estados Unidos aprobó la *Family Support Act*. Esta requiere que todos los estados de la Unión

---

[41] 8 LPRA sec. 1383.

[42] *Íd.*, sec. 1381.

implementaran guías mandatorias para la fijación de la pensión alimentaria.[43] Específicamente, la ley establece lo siguiente:

(a) Establishment of guidelines; method

Each State, as a condition for having its State plan approved under this part, must establish guidelines for child support award amounts within the State. The guidelines may be established by law or by judicial or administrative action, and shall be reviewed at least once every 4 years to ensure that their application results in the determination of appropriate child support award amounts.[44]

Entre otras cosas, el estatuto crea una presunción controvertible de que al aplicar las guías y hacer el cálculo para fijar la pensión, la cantidad resultante es la correcta. La ley también facultó a los tribunales para que, a su discreción, si al momento de fijar la pensión consideran que es injusta o inapropiada, se "desvíen" de las guías establecidas. En lo pertinente la disposición en cuestión señala lo siguiente:

(2) There shall be a rebuttable presumption, in any judicial or administrative proceeding for the award of child support, that the amount of the award which would result from the application of such guidelines is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case, as determined under criteria established by the State, shall be sufficient to rebut the presumption in that case.

---

[43] 42 USC sec. 667.

[44] *Íd.*

Así, cada estado ha creado sus propios métodos para el desvío luego de determinar, a base de las guías, la cantidad que cada uno de los padres debe pagar de pensión alimentaria.[45] Estas desviaciones están basadas en un sinnúmero de circunstancias y factores. Algunas de las razones pueden estar relacionadas a necesidades económicas del padre o madre no custodio, a condiciones físicas o emocionales que tenga el menor; así como los gastos relacionados al derecho de visita, entre otros.[46]

El estado de Michigan, en particular, obliga a los tribunales a determinar y establecer una pensión alimentaria según la fórmula (*Michigan Child Support Formula*) y las guías mandatorias establecidas.[47] Para ello se requiere que las cortes consideren tanto las necesidades del alimentista como los recursos de cada uno de los padres. No obstante, una vez se determina la cantidad de pensión alimentaria, el tribunal tiene discreción para desviarse de las guías si, a base de los hechos particulares de cada caso, determina que aplicarlas constituye una acción injusta o inapropiada.[48]

---

[45] P. Woodland Faerber, *Empirical Study: A Guide to the Guidelines: A Longitudinal Study of Child Support Guidelines in the United States*, 1 J. L. & Fam Stud. 151 (1999).

[46] *Íd.*

[47] En 1982 la Legislatura de Michigan aprobó una ley que requería a la Oficina Administrativa de los Amigos de la Corte (*State Court Administrative Office's Friend of the Court Bureau*) de ese estado desarrollar una fórmula para establecer y modificar pensiones alimentarias. Véase *Burba v. Burba*, 610 N.W. 2d 873 (2000).

[48] Michigan Compiled Laws, sec. 552.605, Child support order; deviation from formula; agreement,en

http://www.legislature.mi.gov/(S(0c2z5bjjk1a5igs5wmbckm5v))/mileg.aspx?page=GetObject&objectname=mcl-552-605 (última visita, 17 de enero de 2018).

Para desviarse de la fórmula, primero, la corte debe establecer la cantidad de pensión alimentaria que, conforme al proceso, ésta hubiese ordenado.[49] Es imperativo que se cumpla con unos criterios específicos y que conste en récord por escrito la cantidad determinada y los fundamentos para el desvío.[50] Específicamente, la solicitud para la concesión del desvío debe contener lo siguiente:

> (a) The child support amount determined by application of the child support formula.
>
> (b) How the child support order deviates from the child support formula.
>
> (c) The value of property or other support awarded instead of the payment of child support, if applicable.
>
> (d) The reasons why application of the child support formula would be unjust or inappropriate in the case.[51]

La ley también permite que las partes lleguen a un acuerdo en cuanto a la cantidad, siempre que se cumplan los requisitos mencionados y aun cuando ello implique una desviación de la fórmula.[52] Luego de esbozar el marco jurídico que aplica en este caso analizaremos las interrogantes planteadas.

**III**

---

[49] *Íd.*

[50] *Íd.*

[51] *Íd.*; *Burba v. Burba*, *supra; Ghidotti v. Barber,* 586 N.W.2d 883 (1998). Véase, además, https://sdmichiganfamilylaw.com/child-support-formula-in-michigan/(última visita, 17 de enero de 2018).

[52] *Michigan Compiled Laws,* sec. 552.605, inciso 5(3).

La controversia se circunscribe a determinar si el Tribunal de Primera Instancia tenía jurisdicción para modificar la sentencia de divorcio emitida por el Tribunal de Michigan, que establece la custodia, la pensión alimentaria y las relaciones paternofiliales de los dos hijos menores de edad de la señora Cancel Rivera y del señor González Ruiz.

Los foros inferiores resolvieron que, al amparo de la Sección 1301 de la LUIAF, los tribunales de Puerto Rico tenían jurisdicción. El Tribunal de Primera Instancia resolvió que conforme al inciso (a) de la referida ley un individuo no residente se somete a la jurisdicción de Puerto Rico cuando, entre otras razones, presenta una alegación responsiva que tiene el efecto de una renuncia a la defensa de falta de jurisdicción o cuando el menor reside en Puerto Rico como resultado de sus actos o directrices.

A base de lo anterior, determinó que el peticionario se había sometido a la jurisdicción del tribunal de Puerto Rico, ya que —como parte de la referida sentencia de divorcio— consintió a que los menores residieran en Puerto Rico. Además, señaló que "Puerto Rico adquirió calidad de estado-hogar de los menores, ya que éstos han residido en esta jurisdicción por cinco (5) años". Por lo tanto, entendió "que en el mejor interés de los menores, se debe atender el caso en la jurisdicción de Puerto Rico porque la evidencia sustancial sobre el mismo existe en nuestra jurisdicción". Por su parte, el Tribunal de Apelaciones

resolvió que la sentencia de divorcio emitida por el Tribunal de Michigan no estableció una pensión alimentaria. Por esta razón, entendió que Puerto Rico podía asumir jurisdicción ya que no estaba impedido de así hacerlo, según lo establecido en la LUIAF. Ambos foros erraron en su proceder.

**A**

En primer lugar, según las disposiciones de la PKPA, antes de modificar una sentencia de divorcio que contiene lo relacionado a la custodia y el derecho de visita de los hijos menores, lo primero que un tribunal debe verificar es si el dictamen original del foro con jurisdicción continua cumple con la PKPA. Así, al examinar con detenimiento la letra de la ley, es evidente que el Tribunal de Michigan cumplió con este requisito. Éste era el foro con jurisdicción, pues, tanto las partes como los menores residían allá. Además, era en ese estado en donde, al momento de la determinación, estaba disponible la evidencia sustancial relativa al cuidado de éstos.

El foro judicial de Michigan, en efecto, realizó una determinación sobre custodia y alimentos que fue consentida por las partes y que no fue impugnada. En la sentencia de divorcio estableció que, conforme a la discreción que le da la ley para conceder un desvío, la suma correspondiente a los alimentos sería para cubrir los gastos de viaje y

transportación para que el padre pueda relacionarse con los menores.[53]

Relacionado a lo anterior y acorde con la Sección 1738B (e)(2)(A), entendemos que para que el foro local pudiese modificar la orden de pensión alimentaria de un tribunal de otro estado, ese otro estado no podía haber retenido, ni haber ejercido, la jurisdicción continua ni exclusiva; y ninguna de las partes podía ser residente en dicho estado. En el caso de epígrafe, estos requisitos no se cumplen ya que, como mencionáramos, el foro de Michigan sí continuó ejerciendo su jurisdicción continua y el peticionario continuó residiendo allí.

Surge del expediente que en todo momento el Tribunal de Michigan retuvo y continuó ejerciendo su jurisdicción sobre la materia y las partes. Además, basta con leer la sentencia para darse cuenta de que ese foro expresamente se reservó el derecho de emitir cualquier orden para implementar los términos del decreto. Asimismo, mediante el acápite titulado "Retention of Jurisdiction" retuvo la jurisdicción sobre los asuntos dispuestos en la sentencia y las partes, para asegurar su cumplimiento. Así lo consignó tanto en la sentencia de divorcio como en la orden que emitió el 15 de enero de 2016, para que la recurrida cumpliera con los acuerdos filiales de la sentencia de divorcio. Cabe destacar que no surge del expediente que hubiera un consentimiento

---

[53] *Judgement of Divorce*, Apéndice de la Petición de *certiorari*, págs. 122-123.

expreso para que el foro local asumiera la jurisdicción continua y exclusiva. Por lo anterior, no se justificaba que este asumiera jurisdicción.

En varias ocasiones hemos realizado interpretaciones sobre la PKPA, particularmente en asuntos sobre custodia. Por ejemplo, en *Ortega v. Morales*, *supra*, expresamos que la PKPA le daba preferencia al estado de residencia del menor y, que de existir conflicto con respecto a cuál requisito jurisdiccional procedía aplicarse, "siempre deber[ía] prevalecer el del estado residencia del menor".[54] No obstante, en *Santiago v. Kabuka*, *supra*, señalamos que, aunque la PKPA daba preferencia al estado residencia, dicho estatuto confería jurisdicción continua **al estado emisor del decreto original y que "la jurisdicción continua [era] el criterio principal, aun cuando ésta no [fuera] la jurisdicción de residencia del menor".**[55]

Finalmente, como mencionamos, en *Collazo Dragoni v. Noceda González*, *supra*, resolvimos que los tribunales de Puerto Rico mantienen jurisdicción continua para atender una modificación de custodia **siempre y cuando se satisfagan los requisitos de la PKPA, aun cuando el estado de residencia del menor sea otro.** En lo pertinente, allí expresamos que cuando una parte solicite a un tribunal **modificar** un decreto de custodia o de relaciones filiales, ese tribunal, antes de atender el asunto, debe auscultar si tiene jurisdicción para

---

[54] *Íd.*, pág. 792.

[55] *Íd.*, pág. 536.

ello conforme al PKPA. En este sentido, si existe un decreto de custodia que emitió un tribunal, según la ley de ese estado, ningún otro tribunal puede modificarlo. Por consiguiente, ante la existencia de un decreto original que se ajuste a las disposiciones del estatuto, la jurisdicción continua es el criterio principal, aun cuando ésta no sea el estado de residencia del menor.

**B**

En cuanto a los procedimientos para **establecer o ejecutar** una orden de pensión alimentaria, un tribunal de Puerto Rico podrá ejercer jurisdicción sobre un individuo no residente, o sobre el tutor o encargado del individuo, si el menor reside en Puerto Rico como resultado de actos o directrices del individuo.[56] Empero, la ley es clara al determinar que tal fundamento no podrá utilizarse para adquirir jurisdicción sobre la persona del individuo si lo que se pretende es modificar una orden de pensión emitida por otro estado, a menos que se cumpla con los requisitos establecidos en la sección 1381 del mismo título. Más aún, la sección 1381 dispone que ante el recibo de una petición, un tribunal de Puerto Rico puede modificar una orden de pensión alimentaria para un menor emitida en otro estado y registrada en Puerto Rico, **si no es de aplicación la sec. 1383 de la Ley**, **y** si, luego de notificación y vista, el

---

[56] 8 LPRA sec. 1301, inciso (5).

tribunal determina que se han cumplido ciertos requisitos estatutarios.

En ese contexto, es oportuno aclarar que un tribunal de Puerto Rico puede modificar una orden de pensión alimentaria para un menor emitida en otro estado y registrada en Puerto Rico, si luego de la notificación y vista, el tribunal determina que:

(1) Los siguientes requisitos se han cumplido:

(A) Ni el menor, ni el alimentista ni el alimentante residen en el estado emisor;

(B) un peticionario, que no es residente de Puerto Rico solicita la modificación de la orden; **y**

(C) el peticionario está sujeto a la jurisdicción del tribunal de Puerto Rico; **o**

(2) Puerto Rico es la residencia del menor, o una parte que es un individuo está sujeta a la jurisdicción del tribunal de Puerto Rico, **y** todas las partes han prestado consentimientos que constan en récord en el tribunal emisor para que un tribunal de Puerto Rico modifique la misma y asuma jurisdicción continua y exclusiva.[57]

Es decir, que para que un foro judicial en Puerto Rico pueda modificar una orden de pensión alimentaria emitida por otro estado, en primera instancia, la orden debe estar registrada en Puerto Rico; se le tiene que notificar a las partes y debe haberse celebrado una vista. **Además, ninguna de las partes debe residir en el estado emisor,** el peticionario no residente es quien debe solicitar la modificación de la orden de pensión alimentaria y estar

---

[57] 8 LPRA sec. 1381.

sujeto a la jurisdicción de Puerto Rico. En la alternativa, debe constar en récord que **todas las partes prestaron su consentimiento en el tribunal emisor** para que el tribunal local tenga jurisdicción continua y exclusiva.

No obstante, reiteramos que cuando un tribunal de un estado retiene la jurisdicción *continua y exclusiva* sobre una orden de pensión alimentaria, los tribunales de otro estado están impedidos de modificarla.[58]

C

Luego de analizar el estado de derecho enunciado es forzoso concluir que el Tribunal de Michigan emitió un decreto de custodia y alimentos de forma consistente con la ley y conservó la jurisdicción continua y exclusiva sobre su dictamen original. Por lo tanto, al no estar presentes los requisitos estatutarios para que el tribunal de Puerto Rico adquiera jurisdicción, tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones excedieron sus facultades, al actuar sin jurisdicción. Por consiguiente, están impedidos de modificar ese dictamen judicial. Al considerar las disposiciones antes aludidas, colegimos que

---

[58] Véase *Aponte v. Barbosa Dieppa*, 146 DPR 558 (1998). Allí examinamos una solicitud de rebaja de pensión a la luz de la Ley Núm. 180-1997, *Ley Interestatal Uniforme de Alimentos entre Parientes* (LIUAP), 8 LPRA 541 *et seq.*, y la FFCCSOA. Distinto a lo que ocurrió en el caso ante nos, en aquel los tribunales inferiores determinaron que, conforme a la sección 611 de la *Uniform Interstate Family Support Act* -equivalente a la sección 547(b) de la LIUAP- no tenían jurisdicción continua y exclusiva para modificar la orden de pensión alimentaria emitida por el tribunal de Massachusetts. En aquella ocasión, entre otras cosas, confirmamos ya que los menores aún residían en ese estado y las partes no prestaron su consentimiento escrito para que los tribunales de Puerto Rico pudiesen modificarla.

el fundamento utilizado para justificar su intromisión es contrario al esquema jurídico que aplica a la controversia ante nuestra consideración.

## IV

Por los fundamentos que anteceden, se revoca la determinación del Tribunal de Apelaciones. En consecuencia, se desestima la demanda para fijar pensión y relaciones paternofiliales. Se dicta sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jackeline Cancel Rivera

    Recurrida

       v.

Carlos David González Ruiz     CC-2017-0226

    Peticionario

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de mayo de 2018.

Por los fundamentos que anteceden, se revoca la determinación del Tribunal de Apelaciones. En consecuencia, se desestima la demanda para fijar pensión y relaciones paternofiliales.

Lo pronunció y manda el Tribunal y certifica el Secretario del Tribunal Supremo. Los Jueces Asociados señores Estrella Martínez y Colón Pérez no intervinieron.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo