*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANDERA ZORA,

      Plaintiff-Appellee,

v

DHAFIR JARBO,

      Defendant-Appellant.

UNPUBLISHED
July 2, 2024

No. 364533
Genesee Circuit Court
LC No. 2019-328957-DM

Before: GADOLA, C.J., and BORRELLO and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right the trial court's judgment of divorce that divided the parties' marital property and awarded the parties joint legal custody of their minor child, but awarded sole physical custody of the child to plaintiff. The court also ordered defendant to pay plaintiff spousal support for two years, to pay child support of $846 a month, and to pay an unspecified amount of plaintiff's attorney fees. We affirm in part, vacate in part, and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The parties were married in December 2014 and have one child, who was born in 2017. Plaintiff filed this action for divorce in July 2019. The proceedings became contentious, resulting in many disputes and motions, and culminating in a 10-day trial that ended in January 2022.

The parties initially lived in an apartment after they were married. Plaintiff paid the rent because defendant did not qualify to be on the lease, which was solely in plaintiff's name. In 2017, defendant bought a home on Misty Morning Drive in Flushing, where the family lived together until the breakdown of the marriage. In March 2019, defendant signed a quitclaim deed conveying the Misty Morning property to himself and his brother Nawar, as tenants in common. Defendant claimed that Nawar contributed toward the mortgage payments.

Throughout the marriage, defendant's family figured prominently in the couple's lives. A focal point of the proceedings was plaintiff's resistance to the amount of time that defendant and the child spent with defendant's close-knit family. The family often gathered at defendant's brothers' home on Redding Street in Troy (the "Redding home"), which was formerly the

-1-

residence of defendant's parents. Many of defendant's family members gathered at the Redding home on Sundays for meals, to watch football, and to spend time together. After the couple separated, defendant and the child would spend about two nights a week at the Redding home during defendant's parenting time.

Defendant was involved in businesses with his brothers. Defendant had a 25% interest in a liquor store, Marvin's Liquor, that was jointly owned with his brother Steven who owned 75%. Defendant also owned the building, called the "Chamberlain building," that housed the liquor store. In March 2019, defendant established Landon J. Properties, LLC, and transferred ownership of the Chamberlain building to that company. Defendant then allegedly transferred 90% ownership in Landon J. Properties to another brother, Mouaid, and kept 10% for himself. Although the Chamberlain building has four business units, Marvin's Liquor was the only tenant actively paying rent at the time of trial. Marvin's Liquor previously paid defendant $2,500 a month in rent, but defendant later reduced the amount to $1,500 a month.

Throughout the marriage, plaintiff was the sole owner of the Penthouse Club in Detroit, which was owned and managed without any input or financial backing from defendant. However, the business closed in September 2019.

The trial was conducted in two phases. The first phase, held in September and October 2020, focused on custody and parenting time. The second phase, held over eight days in January 2022, focused on the division of property, child support, and spousal support. The trial court addressed all issues in a written opinion issued in November 2022, and entered its judgment of divorce in December 2022.

The trial court awarded the parties joint legal custody of their child, but awarded sole physical custody to plaintiff. The court awarded defendant parenting time on alternating weekends from 10:00 a.m. on Saturday until 7:00 p.m. on Sunday, and one evening a week from after school until 7:00 p.m. The court prohibited defendant from exercising any overnight parenting time at the Redding home, which the court stated "more closely approximates a family rooming house than a suitable residence for a young child." The trial court ordered defendant to pay $846 a month in child support. Additionally, the court ordered defendant to pay plaintiff spousal support of $1,500 a month for 12 months, and then $1,200 a month for an additional 12 months.

Furthermore, the trial court found that a condominium that plaintiff purchased after the parties separated qualified as marital property, but awarded it to plaintiff. The trial court found that the Penthouse Club was plaintiff's separate property and that defendant should not share in any of its income or its indebtedness. The trial court determined that Marvin's Liquor and Landon J. Properties had a combined value of $809,500 and it awarded plaintiff 48% of that value for her share of the businesses. The trial court also ordered that plaintiff could elect to force a sale of the businesses, in which event she would be entitled to the first $388,560 of any sale proceeds. Finally, the trial court held that defendant was required to pay "some or all" of plaintiff's reasonable attorney fees, in an amount to be determined at a later date.

Defendant appeals the judgment of divorce. Defendant asserts the trial court erred in failing to consider the child's established custodial environment before making its custody determination. Further, defendant contends the trial court's findings as to defendant's income

were against the great weight of the evidence, and thus abused its discretion in awarding child support and spousal support. Lastly, defendant argues the trial court's division of property and award of attorney fees were abuses of discretion.

## II. ESTABLISHED CUSTODIAL ENVIRONMENT

Defendant first argues that the trial court erred by deciding the issue of custody without first determining the child's established custodial environment. We agree.

This Court employs three different standards of review when analyzing child-custody cases. *Foskett v Foskett*, 247 Mich App 1, 4; 634 NW2d 363 (2001). This Court reviews a trial court's choice, interpretation, and application of the existing law for clear legal error. *Id*. at 4-5. This Court reviews a trial court's findings of fact under the great weight of the evidence standard, where a trial court's factual findings will be upheld unless "the evidence clearly preponderates in the opposite direction." *Id*. (citation omitted). Discretionary rulings, including the trial court's ultimate determination of custody, are reviewed for an abuse of discretion. *Id*.. Whether an established custodial environment exists is a question of fact. *Mogel v Scriver*, 241 Mich App 192, 197; 614 NW2d 696 (2000). Thus, a trial court's findings regarding the existence of an established custodial environment must be affirmed unless the evidence clearly preponderates in the opposite direction. *Phillips v Jordan*, 241 Mich App 17, 20; 614 NW2d 183 (2000).

"[A] trial court is required to determine whether there is an established custodial environment with one or both parents before making *any* custody determination. *Kessler v Kessler*, 295 Mich App 54, 61; 811 NW2d 39 (2011) (emphasis in original). The determination of an established custodial environment is crucial because it determines the applicable burden of proof. *Id*. at 61. MCL 722.27(1)(c) provides, in pertinent part:

> . . . The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

Because the trial court's award of custody in this case was a new order and not a modification or amendment of a prior order, it was only subject to the limitation in MCL 722.27(1)(c) that the court "shall not . . .issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." A trial court's failure to determine "whether there was an established custodial environment is clear legal error," and this error "is not harmless because the trial court's determination regarding whether an established custodial environment exists determines the proper burden of proof in regard to the best interests of the children." *Kessler*, 295 Mich App at 62.

Although the trial court acknowledged in its opinion that it "must determine whether the child has an established custodial environment with either or both parents as this determination charts the burden of proof for the party seeking the change," it neglected to specifically decide whether an established custodial environment existed with either or both parents. Rather, the trial court determined that it was unnecessary to make a determination regarding an established custodial environment because "under either metric of evidentiary proof (clearly convincing or the preponderance of evidence), Defendant's request for split custody falls short."

The flaw in the trial court's analysis is that it did not view the custody dispute as one involving an original custody determination. Both parties had requested physical custody of the child and the trial court had not made a prior custody determination, yet the court analyzed the custody dispute solely from the perspective of placing a burden of proof on defendant to show that a "change" of custody was appropriate, without first determining whether the child had an established custodial environment that would be subject to change. The court concluded that "[s]uch a change is simply not warranted."

The trial court needed first to determine if the child had an established custodial environment with one or both parents in order to determine whether an award of joint physical custody to defendant would alter the child's established custodial environment. The trial court's framework may have been appropriate if the court had first determined that an established custodial environment existed solely with plaintiff, in which case the court could not alter that established custodial environment unless clear and convincing evidence showed that such a change was in the child's best interests. Conversely, if an established custodial environment existed with both parties, then the court would have been required to maintain that established custodial environment unless clear and convincing evidence demonstrated a change was in the child's best interests. In either case, it was necessary first to determine whether the child had an established custodial environment with one or both parties.

Furthermore, as discussed later, the trial court also failed to make any findings regarding the statutory best-interest factors in MCL 722.23. Because the trial court's failure to expressly decide whether an established custodial environment existed with one or both parents affects the framework for properly resolving this custody dispute, the error was not harmless. Indeed, plaintiff concedes that the trial court erred by failing to determine whether an established custodial environment existed with one or both parties and that remand for such a determination is necessary. Accordingly, we vacate the trial court's custody decision and remand for a determination whether an established custodial environment exists with one or both parents, and further proceedings consistent with that determination.

## III. BEST INTEREST OF THE CHILD AND PARENTING TIME FACTORS

Defendant also argues that the trial court erred by failing to make necessary findings regarding the statutory best-interest factors in MCL 722.23 and the parenting-time factors in MCL 722.27a. We agree.

In child-custody disputes, the best interests of the child control. MCL 722.25(1). To determine the best interests of the child, the trial court must consider all the factors provided in MCL 722.23. *Foskett*, 247 Mich App at 9. The factors are:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express a preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23].

In actions tried without a jury, a trial court is required to make findings of fact and separately state its conclusions of law. MCR 2.517(A)(1). "Brief, definite, and pertinent findings and conclusions on the contested matters are sufficient, without over elaboration of detail or particularization of facts." MCR 2.517(A)(2); *Foskett*, 247 Mich App at 12-13. In child custody disputes, a trial court must consider and explicitly state its findings of fact and conclusions regarding each best-interest factor. *Rittershaus v Rittershaus*, 273 Mich App 462, 475; 730 NW2d 262 (2007). The court is not required to comment on every matter in evidence or declare acceptance or rejection of every proposition argued, but the record must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings. *Id*.

In this case, after noting that the parties' submitted proposed findings of fact and conclusions of law on all trial issues, the trial court analyzed the best-interest factors as follows:

> A comparison of the proposed findings of fact and conclusions of law submitted by the parties reveals Defendant's position is woefully unpersuasive. After days and days of trial, Plaintiff submitted detailed factor by factor analysis under each of the best interest factors, MCL 722.23(a)-(l). Defendant submitted generalized statements about Plaintiff viewing dad as a loving, supportive husband and father. This custody battle was no contest and Defendant's position is marked by a paucity of real support. The Court has reviewed the detailed articulation of the evidence in support of Plaintiff's claim that [the child's] best interest would be served by remaining with her under her custody. She is awarded physical custody and the child's residence is established as her home.

Thus, the trial court commented on the adequacy of the parties' proposed findings of fact, but it did not explicitly state its own findings of fact or conclusions of law regarding any of the best-interest factors. Indeed, the court did not indicate which factors it believed favored each party, neither party, or were irrelevant. Without knowing how the trial court considered and resolved each best-interest factor, there is no record for this Court to determine whether the evidence clearly preponderates against the trial court's findings. See *Ritterhaus*, 273 Mich App at 475. Therefore, we remand for explicit findings of fact and conclusions of law regarding each best-interest factor and for the court to reconsider its custody decision in light of its findings.

Defendant also argues that the trial court failed to make appropriate findings in support of its decision regarding parenting time. "The child's best interests govern a court's decision regarding parenting time." *Shade v Wright*, 291 Mich App 17, 31; 805 NW2d 1 (2010), citing MCL 722.27a(1). "Both the statutory best interest factors in the Child Custody Act, MCL 722.23, and the factors listed in the parenting time statute, MCL 722.27a(6),[1] are relevant to parenting

---

[1] The parenting-time factors are now set forth in MCL 722.27a(7), which provides that a court may consider the following factors when determining the frequency, duration, and type of parenting time to be granted:

> (a) The existence of any special circumstances or needs of the child.
>
> (b) Whether the child is a nursing child less than 6 months of age, or less than 1 year of age if the child receives substantial nutrition through nursing.
>
> (c) The reasonable likelihood of abuse or neglect of the child during parenting time.
>
> (d) The reasonable likelihood of abuse of a parent resulting from the exercise of parenting time.
>
> (e) The inconvenience to, and burdensome impact or effect on, the child of traveling for purposes of parenting time.
>
> (f) Whether a parent can reasonably be expected to exercise parenting time in accordance with the court order.
>
> (g) Whether a parent has frequently failed to exercise reasonable parenting time.

time decisions." *Id.* Although "[c]ustody decisions require findings under all of the best interest factors, . . . parenting time decisions may be made with findings on only the contested issues." *Id.* at 31-32 (citation omitted).

In this case, the trial court correctly stated that the frequency, duration, and type of parenting time was within the court's discretion, but it did not recite or analyze any of the parenting-time factors listed in MCL 722.27a(7). Moreover, as already noted, the court did not make any findings regarding the best-interest factors in MCL 722.23, which may also be relevant to parenting time decisions. *Shade*, 291 Mich App at 31. Therefore, remand is also necessary for the trial court to reconsider the issue of parenting time and to make appropriate findings of fact on contested issues consistent with the child's best interests and MCL 722.27a.

## IV. CHILD SUPPORT

Defendant argues that the trial court erred by failing to make factual findings regarding its determination of defendant's income for purposes of calculating child support. We agree.

In *Borowsky v Borowsky*, 273 Mich App 666, 672; 733 NW2d 71 (2007), this Court explained:

> Whether the trial court properly applied the Michigan Child Support Formula (MCSF) to the facts of the case is a question of law that this Court reviews de novo. *Burba v Burba (After Remand)*, 461 Mich 637, 647; 610 NW2d 873 (2000). This Court also reviews de novo the proper interpretation of the MCSF and the applicable statutes. *Atchison v Atchison*, 256 Mich App 531, 534-535; 664 NW2d 249 (2003). This issue also involves review of matters committed by the MCSF to the discretion of the trial court. Where the MCSF commits a matter to the discretion of the trial court, this Court will review the trial court's exercise of discretion for abuse. *Burba*, *supra* at 649 (holding that the trial court abused its discretion by deviating from the formula for a legally improper reason). An abuse of discretion occurs when a court selects an outcome that is not within the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). Finally, to the extent that the trial court made factual findings in determining the amount of support under the child support formula, those findings are reviewed for clear error. *Beason v Beason*, 435 Mich 791, 805; 460 NW2d 207 (1990).

Throughout the trial, the parties disputed defendant's income from Marvin's Liquor and Landon J. Properties. Defendant presented evidence of his tax returns, including his W-2 wages.

---

(h) The threatened or actual detention of the child with the intent to retain or conceal the child from the other parent or from a third person who has legal custody. A custodial parent's temporary residence with the child in a domestic violence shelter shall not be construed as evidence of the custodial parent's intent to retain or conceal the child from the other parent.

(i) Any other relevant factors.

Plaintiff introduced evidence of large cash deposits that defendant made to his bank account and large payments made on his mortgage. There was also evidence that defendant transferred 90% of his ownership in Landon J. Properties to his brother, reduced the rent that Marvin's Liquor paid to Landon J. Properties, and reduced his salary from Marvin's Liquor. In its opinion, the trial court addressed defendant's income for purposes of calculating child support as follows:

> Testimony and exhibits reveal that Defendant's stated income levels are marked by incredulity, shenanigans, subterfuge, and a clear effort to manipulate for divorce purposes. (Defendant apparently likes to give away assets for nothing in return.) He spends more than he reportedly makes. She makes nothing even though she could. Child support will be calculated on his income of $6,500 per month and hers at $3,500 per month, effective the entry date of this order.

"The Michigan Legislature has required that when a court orders child support as part of a divorce judgment 'the court shall order child support in an amount determined by application of the child support formula developed by the state friend of the court bureau' unless to do so would be 'unjust or inappropriate' and the trial court makes certain specified findings 'in writing or on the record . . . .' " *Stallworth v Stallworth*, 275 Mich App 282, 283-284; 738 NW2d 264 (2007), quoting MCL 552.605(2); *Peterson v Peterson*, 272 Mich App 511, 516-517; 727 NW2d 393 (2006). Pursuant to the 2021 MCSF Manual, "courts must order child support in the amount determined by applying this formula." 2021 MCSF 1.10(B). If the trial court deviates from the formula, it must make a record regarding the statutory criteria for doing so. *Stallworth*, 275 Mich App at 284 (citation omitted).

"The first step in figuring each parent's support obligation is to determine both parents' individual incomes." 2021 MCSF 2. This is generally determined by ascertaining "the actual resources of each parent." MCL 552.519(3)(a)(*vi*). The MCSF provides guidance for determining income for self-employed individuals and small business owners. 21 MCSF 2.01(E). In addition, trial courts are allowed to impute income to a parent on the basis of the parent's unexercised ability to pay when the parent has an actual ability and likelihood of earning the imputed income. *Stallworth*, 275 Mich App at 284 (citation omitted).

Defendant complains that the trial court clearly erred by finding that he had a yearly income of $78,000 for purposes of determining child support without making appropriate findings of fact to explain how it arrived at this figure. Although defendant relies only on his W-2 wages for the last five years to support his argument that the trial court erred by finding that he had an annual income of $78,000, the MCSF does not restrict income to wages, but also includes earnings from other sources. 2021 MCSF 2.01(C). There was evidence that defendant's highest W-2 wage level from the previous five years was $32,000 in 2018. But defendant also received rental income ranging from $24,000 in 2016 to $43,8000 in 2018. And defendant received a K-1 distribution of $17,076 from Jarbo Brothers in 2020 and a K-1 distribution of $1,324 from Landon J. Properties in 2019.

Defendant's adjusted gross income on his tax returns was $52,280 in 2016, $49,453 in 2017, $59,027 in 2018, 43,443 in 2019, and $39,159 in 2020. As plaintiff points out, however, there was also evidence of large cash deposits to defendant's bank accounts, which defendant failed to explain fully. Additionally, there was evidence that between April 2018 and March 2019,

approximately $51,000 in mortgage payments were made against the mortgage on defendant's Misty Morning property, although defendant claimed that his brother Nawar also contributed toward those payments. Defendant also testified that in March 2019, he reduced his work hours, ostensibly to spend more time with the child, which the trial court could have found supported a decision to impute additional income to defendant.

The trial court erred in failing to explain how it arrived at a monthly income of $6,500 for defendant. Although there was evidence from which the trial court could have found that defendant's actual monthly income was greater than what he reported, or that additional income could be imputed to defendant because of an unexercised ability to earn a greater income, the trial court failed to specify how it resolved the disputed issues related to defendant's income. We are also unable to discern from the trial court's statements that defendant's "stated income levels are marked by incredulity, shenanigans, subterfuge, and a clear effort to manipulate" whether the court followed the guidance in the MCSF for determining defendant's actual income, or whether the court imputed additional income to defendant because it found that he voluntarily reduced or eliminated his income. The trial court failed to make any factual findings on the disputed issue whether defendant voluntarily reduced his income. *Stallworth*, 275 Mich App at 287. If the court imputed income to defendant, it was required to analyze the factors in 2021 MCSF 2.01(G). Therefore, it is also necessary to vacate the trial court's award of child support and remand for reconsideration of the issue of child support consistent with the MCSF and for specific factual findings regarding defendant's actual income or any decision to impute income to defendant.

## V. SPOUSAL SUPPORT

Defendant also argues that several of the trial court's factual findings supporting its award of spousal support are clearly erroneous, and therefore, the court erred by awarding plaintiff spousal support of $1,500 a month for one year and $1,200 a month for a second year. We agree that some of the trial court's findings are clearly erroneous.

This Court reviews a trial court's award of spousal support for an abuse of discretion. *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012). This Court also reviews a trial court's decision whether to impute income to a party for an abuse of discretion. *Id*. at 25-26. "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id*. at 26 (citation omitted). Any factual findings by the trial court are reviewed for clear error. *Id*. A finding is clearly erroneous if, after reviewing the entire record, this Court is left with the definite and firm conviction that a mistake was made. *Id*. "If the trial court's findings are not clearly erroneous, we must determine whether the dispositional ruling was fair and equitable under the circumstances of the case." *Id*. (citation omitted).

In awarding spousal support, the goal is to balance the incomes and needs of the parties so that neither will be impoverished. *Berger v Berger*, 277 Mich App 700, 726; 747 NW2d 336 (2008). The amount of spousal support is to be based on what is just and reasonable under the circumstances of the case. *Id*. When considering whether to award spousal support, the trial court should consider the following factors:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded

-9-

to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Loutts*, 298 Mich App at 31 (quotation marks and citations omitted.]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Loutts*, 298 Mich App at 32 (citation omitted).

The trial court made brief but specific findings for each spousal support factor. Defendant challenges the trial court's findings regarding several of the factors, which we address below.

## A. LENGTH OF THE MARRIAGE

The trial court found that the parties had been marred for seven years, which it considered to be neither a short-term nor a long-term marriage. Defendant contends this was an error because at the time plaintiff filed her complaint for divorce in 2019, the parties had been married for less than five years. However, defendant submitted proposed findings of fact and conclusions of law to the trial court in which he asserted that the marriage was seven years, two months and 18 days. The trial court's finding is consistent with defendant's own proposed findings of fact. "A party cannot request a certain action of the trial court and then argue on appeal that the action was error." *People v Perkins*, 314 Mich App 140, 158; 885 NW2d 900 (2016); see also *Loutts*, 298 Mich App at 36. In any event, the parties were married in December 2014, and had been married for slightly more than seven years when the trial concluded in January 2022, and had not yet been married for eight years when the trial court issued its opinion in December 2022. Thus the trial court's finding concerning the length of the marriage and that it was neither short term nor long term is not clearly erroneous.

## B. ABILITY TO WORK

Defendant argues that the trial court erred by determining that plaintiff had a limited ability to work. Defendant asserts that plaintiff had an extensive work history and earned significantly more than he during the marriage. Plaintiff argues that the evidence supports the trial court's finding and points out that she had not earned an income of more than $65,000 since 2017, five years before entry of the judgment. Since then, she had been a stay-at-home mother. The trial court found that defendant had "the greater ability to work as he is employed by a family business, is a salaried not hourly employee, and can basically make his own hours." Conversely, the court found that plaintiff had been out of the work force and has greater childcare responsibilities.

We agree that the trial court erred by finding that this factor favored an award of spousal support for plaintiff. Both parties had an equal ability to work. Plaintiff was not working at the time of trial, but she had an established work history and she admitted that she was capable of working a full-time job. Plaintiff did not present any evidence that she was unable to work. Accordingly, the trial court erred by determining that defendant had the greater ability to work.

## C. THE SOURCE AND AMOUNT OF PROPERTY AWARDED TO THE PARTIES

The trial court held that this factor had minimal weight because, while defendant's store and property were successful, "they do not seem to be vastly productive outside of producing income to Defendant and his family." However, the trial court found that this factor "slightly favors an award to Plaintiff, [because] even though she might have some assets, she certainly cannot live off them.." Defendant argues that the trial court erred by failing to consider that plaintiff was awarded 100% of the interest in her business, received equity from the marital home, took her condo free and clear of any interest of defendant, and was awarded an additional $388,560 in property settlement incident to defendant's business interests.

"[S]pousal support is intended to balance the incomes and needs of the parties so that neither party will be impoverished as a result of the divorce." *Gates v Gates*, 256 Mich App 420, 436; 664 NW2d 231 (2003) (quotation marks and citation omitted). "[W]here both parties are awarded substantial assets, the court in evaluating a claim for spousal support, should focus on the income-earning potential of the assets and should not evaluate a party's ability to provide self-support by including in the amount available for support the value of the assets themselves." *Id*. (citation omitted).

Considering this guidance, the trial court's findings regarding this factor are not clearly erroneous. Defendant still owned two businesses that had earning potential and plaintiff's business no longer had any earning potential. Moreover, plaintiff had considerable debt and should not have to support herself on the assets she received in the divorce apart from their income-earning potential. The trial court did not abuse its discretion by assigning this factor only minimal weight and finding it slightly favored plaintiff.

## D. THE PARTIES' ABILITY TO PAY SUPPORT

The trial court found that this factor slightly favored an award of spousal support. The court stated that defendant had the superior ability to pay support because plaintiff was "not as enmeshed in the work force," but regarded this situation as only temporary because plaintiff "is a capable person with some prior work experience." The court found that it was unclear what defendant is capable of doing outside of working at his family business, but remarked that defendant's apparent belief that he could give away assets to his brother slightly favored an award of spousal support. We find no clear error in the trial court's findings regarding this factor.

## E. THE PRESENT SITUATION OF THE PARTIES

The trial court found that this factor favored an award because defendant "is living as he always has, likely spending beyond his means and now flip-flopping between residences" and plaintiff "is trying to start a new life for her and her son." Defendant argues that he was living in an apartment paying $900 in rent, whereas plaintiff owned a condominium and was awarded any income from her business free and clear of any claim from defendant. We hold that the trial court erred in its consideration of this factor because it failed to consider that plaintiff had not worked since she filed for divorce in 2019, despite her admission that she was capable of working a full-time job. The child was born in 2017 and approaching school age at the time of trial, which allowed plaintiff greater flexibility in obtaining a full-time job. Moreover, the trial court did not

cite any factual support for its belief that defendant was living beyond his means. Thus, the trial court erred by finding that this factor favored an award of spousal support.

## F. THE PARTIES' NEEDS

The trial court simply stated that plaintiff "has greater need, but notes this need should be temporary and more transitional." Accordingly, it found that this factor "[f]avors a limited award." Defendant argues that the trial court failed to make any findings of fact to support its conclusion that this factor favored an award of spousal support. Although the court had already found that plaintiff had a greater need due to her unemployment, it failed to consider plaintiff's continued unemployment throughout the duration of the case, despite her past work history and admission that she was capable of working full time. The court did not explain why plaintiff needed two more years to find employment. The trial court's lack of findings as to this factor was clear error.

## G. THE PARTIES' PRIOR STANDARD OF LIVING AND OTHER SUPPORT OBLIGATIONS

The trial court found that both parties' prior standard of living was "marked by excess" and the court stated that it would "not try to emulate it through an award of spousal support." The court also noted that neither party was legally obligated to provide for any other relative. However, the court found that this factor slightly favored an award of spousal support because defendant's "standard of living will not be significantly affected if Defendant pays a modest amount and Plaintiff will struggle without some assistance[.]" Defendant argues that the trial court failed to consider that his income had been reduced and that he was ordered to pay $836 a month in child support. We agree that the trial court erred when it stated that neither party was legally obligated to provide for any other relative, given that the court had ordered defendant to pay child support. Further, the trial court again failed to consider plaintiff's continued unemployment in light of her admission that she could work a full-time job.

## H. GENERAL PRINCIPLES OF EQUITY

The trial court found that this factor favored an award of spousal support because "[p]ayment of a moderate amount of spousal support for a short period of time is much more equitable in these circumstances than no award." Accordingly, the court awarded plaintiff $1,500 a month for the first 12 months after entry of the judgment and $1,200 a month for a second year. Defendant argues that consideration of the relevant spousal support factors do not favor the award and he will be impoverished by the amount awarded. Plaintiff argues that the trial court's award was proper, particularly considering that she was held responsible for considerable debt, had not worked while this case was pending, and had not earned more than $65,000 since 2017.

The evidence does not support defendant's assertion that he would be impoverished by paying plaintiff $1,500 a month for one year and $1,200 a month for another year. Defendant claimed that he willingly gave 90% of his interest in Landon J. Properties to his brother. Defendant received $43,800 in rent in 2018, but after his alleged gift to his brother, his portion of that rent would have been $4,380. Defendant also allowed Marvin's Liquor to reduce its monthly rent payment to Landon J. Properties from $2,500 to $1,500. Considering this evidence, defendant has failed to establish that $1,500 a month of spousal support would impoverish him.

However, because we have concluded that the trial court erred in its consideration of some of the spousal support factors, and because remand is necessary for reconsideration of other issues that may affect a proper determination of spousal support, remand for reconsideration of the trial court's spousal support award is also warranted.

## VI.  DIVISION OF PROPERTY

Defendant raises three challenges to the trial court's property division.  Defendant argues that the trial court erred by (1) failing to treat Landon J. Properties as his separate property, (2) awarding plaintiff a percentage of the value of Marvin's Liquor that was owned by his brother, and (3) awarding plaintiff the entirety of her condominium.

"The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances."  *Gates*, 256 Mich App at 423 (citation omitted).  The trial court must first determine what property is considered marital property and what is considered separate property.  *Cunningham v Cunningham*, 289 Mich App 195, 200-201; 795 NW2d 826 (2010).  "[M]arital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage."  *Id*. at 201 citing MCL 552.19.  Only when the trial court determines what constitutes marital property, thus the marital estate, can it divide the marital estate between the parties in an equitable manner in light of all the circumstances.  *Id*.  Generally, "each party takes away from the marriage that party's own separate estate with no invasion by the other party."  *Id*. (citation omitted).  However, separate assets may transform into marital property "if they are commingled with marital assets and 'treated by the parties as marital property.' "  *Id*. (citation omitted).

Defendant argued below that the Chamberlain building, which he later transferred to Landon J. Properties, was purchased before the parties' marriage, and therefore he should have been awarded this asset as his separate property.  Defendant testified that he purchased the Chamberlain building in 2012 for $150,000 with most of the funds from his savings, but also received gifts from friends and family to help with the purchase.  Plaintiff agreed that she did not know defendant when he purchased the Chamberlain building, but that while they were married, defendant asked her for money to repay his cousin who had lent him money to buy the Chamberlain building.  Plaintiff claimed that she gave defendant $70,000 to repay his cousin.  Plaintiff also asserts that defendant made $50,000 worth of improvements to the building using her credit card, which defendant ultimately paid off.

Despite the trial court acknowledging that defendant bought the Chamberlain building before the marriage, it never made any specific finding whether Landon J. Properties was defendant's separate property or marital property.  Although there was evidence from which the trial court arguably could have found that the Chamberlain building was transformed into marital property, there was conflicting evidence on that issue and the trial court never made any findings to support its conclusion that it properly could be treated as a marital asset.  Further, the trial court awarded plaintiff 48% of the value of Landon J. Properties without addressing the fact that defendant only owned a 10% interest in Landon J. Properties.  Accordingly, we vacate the trial court's award of 48% of the value of Landon J. Properties to plaintiff and remand for further consideration and appropriate findings of fact regarding whether Landon J. Properties is defendant's separate property or converted marital property, and if the latter, to then address

defendant's contention that he only possessed a 10% interest in that asset that may be subject to distribution as part of the marital estate.

Defendant also argues that the trial court erred by awarding plaintiff 48% of the value of Marvin's Liquor when defendant only owned a 25% interest. The trial court determined that Marvin's Liquor had an appraised value of $438,500 as of December 31, 2020. Defendant contends this was error because the expert witness evaluated defendant's share in Marvin's Liquor to be worth $79,000. The court awarded all rights to Marvin's Liquor to defendant, but awarded plaintiff 48% of the appraised value of that asset. Also, there was never any testimony or other evidence that defendant owned 100% of Marvin's Liquor. The evidence indicated that defendant's brother Steven bought Marvin's Liquor in 2013 and later transferred 25% ownership to defendant. Steven testified that after defendant had worked at the store for three or four years, Steven thought defendant was doing a good job so he offered defendant 25% of the business. Steven retained a 75% interest. The trial court erred by failing to address that defendant was only a 25% owner of Marvin's Liquor and then awarding plaintiff 48% of the total value of the business, rather than a percentage of defendant's interest.

Furthermore, "[t]his Court has long recognized that the jurisdiction of a divorce court is strictly statutory and limited to determining the rights and obligations between the husband and wife, to the exclusion of third parties." *Estes v Titus*, 481 Mich 573, 582-583; 751 NW2d 493 (2008) (quotation marks and citation omitted). The trial court awarded plaintiff 48% of the appraised value of Marvin's Liquor rather than an actual interest in the business itself. Alternatively, the trial court held that plaintiff could "elect to . . . force a sale of the entirety" of Marvin's Liquor and Landon J. Properties, despite evidence that defendant's brothers also owned portions of these assets. The trial court had no authority to allow plaintiff to force a sale of any property interests of defendant's brothers. Accordingly, we also vacate the trial court's award of 48% of the value of Marvin's Liquor to plaintiff and remand for appropriate findings of fact regarding the extent of defendant's interest in Marvin's Liquor and a distribution of a percentage value of that interest as is equitable under the circumstances.

Defendant also argues that the trial court erred by awarding plaintiff the entirety of her condominium, which the court found was a marital asset. Defendant argues that the trial court erred by awarding plaintiff the entirety of this asset without considering the factors set forth in *Sparks v Sparks*, 440 Mich 141; 485 NW2d 893 (1992). We disagree.

In *Sparks*, the Supreme Court stated that the division of property in a divorce is not governed by any set rules, but that a court should consider "all the equitable factors involved" including (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. *Id.* at 159-160 (citation omitted).

The trial court found that plaintiff's condominium was a marital asset because of the timing of the purchase, but found that plaintiff bought the condominium with her own funds, and that it had "little or no equity that can be considered marital." The court further ruled that defendant was not responsible for any indebtedness on the property. The trial court expressly noted that it had considered the *Sparks* factors in deciding that plaintiff should be awarded the condominium in its

entirety. Under the circumstances, the trial court's decision to award this asset to plaintiff while also holding plaintiff fully responsible for any indebtedness on the property, was not inequitable.

## VII. ATTORNEY FEES

Defendant argues that the trial court erred by ordering him to pay plaintiff's reasonable attorney fees. We agree that remand for reconsideration of this issue is necessary.

A trial court's decision to award attorney fees is reviewed for an abuse of discretion. *Gates*, 256 Mich App at 437-438. An abuse of discretion occurs when a trial court's decision is outside the range of reasonable and principled outcomes. *Stallworth*, 275 Mich App at 284. Findings of fact on which the trial court bases an award of attorney fees are reviewed for clear error. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *Solution Source, Inc v LPR Assoc Ltd Partnership*, 252 Mich App 368, 381-382; 652 NW2d 474 (2002).

Attorney fees are not recoverable as of right in divorce actions, but they are authorized by both statute, MCL 552.13, and court rule, MCR 3.206(D). *Reed*, 265 Mich App at 164. MCL 552.13(1) provides that a trial court may require either party "to pay any sums necessary to enable the adverse party to carry on or defend the action, during its pendency." MCR 3.206(D) provides:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.
>
> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that:
>
> (a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay, or
>
> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules.

Attorney fees may also be awarded under a "common-law exception to the American rule 'that an award of legal fees is authorized where the party requesting payment of the fees has been forced to incur them as a result of the other party's unreasonable conduct in the course of the litigation.' " *Reed*, 265 Mich App at 164-165 (citation omitted).

In this case, the trial court appears to have relied on both the statute and the court rule, although the basis for the court's award of attorney fees is not entirely clear. In its opinion, the trial court explained its decision to award plaintiff attorney fees as follows:

> As all understand, the Court may order one party to contribute to the other party's attorney fees in whole or in part. Two reasons exist for doing so by court

rule and statute. This award may also include attorney fees when there is a significant disparity in the parties' incomes as well if there is one party's dilatory behaviors. Moreover, by statute, MCL 552.13(1), an award may be made so that the other party need not use assets needed to live on to pay fees and costs.

By all metrics, Defendant is ordered to pay toward Plaintiff's attorney fees and costs. He has superior income, has been dilatory with groundless motions, has raised and argued nearly ridiculous positions regarding custody and claims involving Penthouse, and Plaintiff has been awarded little, if any, assets usable to pay fees. The Court finds that the record calls for Defendant to pay some or all of Plaintiff's attorney fees.

The judgment of divorce contained a similar provision:

The Court finds that Defendant shall pay some or all of Plaintiff's attorney fees, which shall be reasonable, determined by a combination of the hours expended and the hourly rate. Plaintiff's counsel may file a motion for a hearing date regarding attorney fees pursuant to the Court's written Opinion, finding Defendant (1) has superior income, (2) has been dilatory with groundless motions, (3) has raised and argued nearly ridiculous positions regarding custody and claims involving Penthouse, and (4) Plaintiff has been awarded little, if any, assets usable to pay attorney fees.

The trial court's attorney-fee award is problematic in several respects. Although the trial court identified different reasons for why attorney fees may be awarded in a divorce action, it did not clearly indicate the legal basis for its decision to award attorney fees in this case. The court stated that defendant had been "dilatory with groundless motions…." This suggests that the trial court may have been relying on either MCR 3.206(D)(2)(b) or the common-law exception that allows attorney fees to be awarded when the requesting party has been forced to incur them as a result of the other party's unreasonable conduct in the course of litigation. However, the trial court did not identify any previous court order that defendant failed to comply with or any discovery violation by defendant to support an award under MCR 3.206(D)(2)(b). Further, to justify an award of attorney fees under the common-law exception, "the attorney fees awarded must have been incurred because of misconduct," and the focus is on whether a party's wrongful conduct caused the other party to incur fees. *Reed*, 265 Mich App at 165. The trial court accused defendant of filing "groundless motions," and raising ridiculous positions regarding custody, but it did not identify any motion that it believed was improperly filed or identify what position regarding custody it believed was "ridiculous." The court also accused defendant of raising ridiculous positions regarding plaintiff's ownership of the Penthouse Club, but again, it did not identify how defendant's positions in relation to this asset qualifies as misconduct.[2] Additionally, plaintiff never established what attorney fees were incurred as a result of any alleged misconduct by defendant.

---

[2] Indeed our resolution of this appeal belies the assertion that defendant raised "ridiculous positions" in the course of this litigation.

The trial court also stated that attorney fees may be awarded when there is a significant disparity in the parties' incomes or so a party need not use assets needed to live on to pay fees and costs. This suggests that the trial court may have found that attorney fees were justified under MCL 552.13(1) or MCR 3.206(D)(2)(a). However, attorney fees under either the statute or the court rule "may be awarded only when a party needs financial assistance to prosecute or defend the suit." *Reed*, 265 Mich App at 164. The trial court did not find that an award of attorney fees was necessary to enable plaintiff to prosecute this action; the court only mentioned that defendant had superior income. Further, an award of attorney fees under MCR 3.206(D)(2)(a) requires a finding not only that one party is unable to bear the expense of the action, but also that the other party is able to pay the requesting party's fees. Merely stating that defendant has a superior income does not satisfy the requirements of the court rule.

The trial court did not make appropriate findings to enable this Court to determine the factual bases for the court's award of attorney fees, thereby preventing this Court from determining whether the trial court correctly applied the law or abused its discretion when awarding attorney fees. Accordingly, we vacate the trial court's award of attorney fees and remand for reconsideration of this issue. On remand, the trial court must identify the specific legal authority for any award of attorney fees and make appropriate findings of fact as necessary to support any fee award.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Sima G. Patel

-17-